## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

TERRANCE GUIDRY,

        Plaintiff,

                                 CASE NO.: 6:19-cv-1936-Orl-41LRH

v.

PENN CREDIT CORPORATION,

        Defendant.

_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Terrance Guidry, respectfully submits this Unopposed Motion for Preliminary Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

This case involves alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b), ("TCPA"), which prohibits the use of automatic telephone dialing systems ("ATDS") to call or text cellular telephones unless the caller has the "prior express consent" of the called party to make such calls. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff alleges that Defendant, Penn Credit Corporation ("Defendant" or "Penn"), (together with Plaintff, the "Parties"), violated the TCPA by initiating debt collection calls via ATDS or prerecorded voice to a cellular telephone

---

[1] All capitalized terms included in this motion and incorporated memorandum of law are defined within the Settlement Agreement and Release, attached hereto as **Exhibit A**, and its definitions are incorporated by reference as if fully set forth herein.

number, and the recipient did not consent to receive such calls. (Doc. 1).

Penn denies any liability and has asserted substantial defenses, (Doc. 10). Specifically, Penn disputes that the ringless voice mails ("RVMs") at issue violate the TCPA, disputes that VoApps, Inc. ("VoApps") was its agent; contends that Plaintiff's claims are not amenable to class certification; and denies that Plaintiff and class members are entitled to damages or injunctive relief. Moreover, Penn – due to its financial condition and limited available insurance – would be unable to withstand a class-wide judgment requiring it to fully compensate all persons who may have received an RVM during the class period.

Nonetheless, the Settlement provides broad relief for all persons who were sent and/or received RVMs from VoApps on behalf of Penn on the voicemail platform associated with their cellular telephones and requires Penn to institute certain meaningful changes to its business practices to help prevent future such calls to cellular telephones without consent. Further, the Settlement provides for the creation of a Settlement Fund, from which payments will be made to a subclass of the Settlement Class whose cellular telephone numbers were obtained via the use of "skip tracing" or similar techniques (the "Skip Trace Subclass"). Importantly, members of the Settlement Class whose cellular telephone numbers were not so obtained (the "Non Skip Trace Subclass") will not release their individual damages claims against Penn.

## II.    BACKGROUND

### A.  Nature of the Claims and Procedural History

On July 31, 2019, Plaintiff filed a class action Complaint against Defendant in the United States District Court for the Western District of Louisana.  (Doc. 1). The Complaint alleged violations of the TCPA and sought class certification, statutory damages, injunctive relief, and an award of attorneys' fees, costs and expenses on behalf of Plaintiff and the proposed class. (Doc. 1). On August 23, 2019, Defendant filed an Answer and Affirmative Defenses.  (Doc. 10).

On October 1, 2019, Defendant filed a motion to transfer this matter to this Court, (Doc. 17), which was granted, (Doc. 22). On November 26, 2019, the Court entered its Case Management and Scheduling Order No. 1, which established deadlines for class discovery and Plaintiff's Motion for Class Certification.  (Doc. 44).

Plaintiff served written discovery requests, including a Rule 30(b)(6) Deposition Notice, interrogatories, and requests for production of documents, to which Defendant served written responses.  Plaintiff also sought third-party discovery aimed at Defendant's vendor VoApps.

Subsequently, the Parties began exploring the potential for resolution of Plaintiff's claims on a class-wide basis. These discussions were prompted by the Parties' desire to avoid the expense, uncertainties, and burden of protracted litigation, and to put to rest any and all claims or causes of action that have been, or could have been, asserted against Defendant arising out of the alleged TCPA violations.

The Parties agreed to Hon. John Thornton (ret.) of JAMS as a mediator. Judge Thornton is well known as a highly skilled and experienced mediator who has mediated many complex and class action cases. On December 22, 2020, the Parties

conducted a full-day mediation session to explore settlement. During the mediation, the Parties set forth and discussed their respective positions on the merits of the class claims and the potential for a settlement that would involve class-wide relief. The Parties exchanged offers and counteroffers, and negotiated the points of each vigorously. At all times, the Parties' negotiations were adversarial, non-collusive, and conducted at arm's length. The mediation resulted in the material terms set forth in the Settlement before this Court for consideration. *See* Declaration of John Yanchunis, attached hereto as Exhibit B, ¶ 13 (hereinafter "Yanchunis Decl.").

### B.   Summary of the Settlement Terms

Following mediation, the Parties turned to the task of memorializing the terms of the resolution in the Settlement, and the form and content of the Notice. Plaintiff and Defendant finalized the terms and details of the Settlement, which is attached hereto as **Exhibit A**.[2] Following is a summary of the Settlement's material terms.

**The Settlement Class**. The Settlement Class includes:

> all persons within the United States that were sent and/or received, without consent, a prerecorded voicemail message sent by VoApps to the individual's cellular voicemail service on behalf of Penn from April 30, 2015 through and including the date the Preliminary Approval Order is entered by the Court.

S.A. ¶ 1.10.

The Settlement Class consists of two subclasses of Class Members – the Skip Trace Subclass Members and the Non Skip Trace Subclass Members. S.A. ¶ 1.10. The Skip Trace Subclass includes the approximately two million Class Members whose

---

[2] The Settlement Agreement is cited to herein after as "S.A."

cellular telephone numbers were obtained by Penn via the use of "skip tracing" or similar techniques, as identified on the Skip Trace Subclass List. S.A. ¶ 1.41. The Skip Trace Subclass is a Rule 23(b)(3) opt-out class. Skip Trace Subclass Members are eligible for the monetary relief descrbied below.

The Non Skip Trace Subclass includes all persons who are Class Members but are not also Skip Trace Subclass Members. S.A. ¶ 1.23. The Non Skip Trace Subclass is a Rule 23(b)(2) class, and thus the parties are not required to provide the right to "opt out" to these class members, nor are the parties required to provide notice. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). The Non Skip Trace Subclass Members will receive the benefit of the Stipulated Injunction, described below, but retain their rights to pursue individual actions for damages. S.A. ¶ 5.2.

**1. Monetary, Prospective and Other Relief for the Benefit of the Settlement Class.** The Settlement requires the establishment of a Settlement Fund in the amount of $4,675,000 to be funded by the Defendant, pursuant to the terms of the Settlement.  S.A. ¶ 1.38.  The Settlement Fund shall be used to pay all: (i) Skip Trace Subclass claims; (ii) Attorneys' Fees and Costs; and (iii) Settlement Administration Expenses. S.A. ¶ 1.38. Each Skip Trace Subclass Member who submits a timely and valid claim form will receive a payment of the *pro rata* share of the Settlement Fund after (a) payment of Attorneys' Fees and Costs to Class Counsel; (b) payment of the Service Award, if any, to the Class Representative; and (c) payment of Settlement

Administration Expenses. Thus, the amounts paid to each valid claimant shall be determined once the total number of valid claims is determined. S.A. ¶ 3.7. In no event shall a Class Member receive more than the maximum that he or she could have received under the TCPA for a single call. S.A. ¶ 3.8.

If, after all payments are processed, an amount greater than $50,000 remains in the Settlement Fund after the initial distribution to Skip Trace Subclass Members who filed a valid claim, then the Settlement Administrator shall distribute the remaining Settlement Fund to Skip Trace Subclass Members who cashed their payment checks in the previous round of distribution on a *pro rata* basis after all costs associated with the second distribution are paid from the remaining Settlement Fund. S.A. ¶ 3.8.

If there remain amounts in the Settlement Fund after all payments have been made to Skip Trace Subclass Members, for Attorney's Fees and Costs, and for Settlement Administrative Expenses, the balance shall be paid to *cy pres* recipient as agreed to by the parties and approved by the Court. S.A. ¶ 3.9.

### 2. Stipulated Injunction.

The Settlement also requires Penn to implement certain changes to its business practices via the entry of a Stipulated Injunction, pursuant to which:

1. Penn shall update and improve its processes and procedures concerning compliance with the TCPA. Such processes and procedures shall include implementation of a scrub of phone numbers placed by clients or otherwise obtained to determine whether the number is a cell phone.

2. If a scrub determines a phone number is a cell phone, Penn shall not itself, nor through any third party, send any prerecorded messages to the number unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls.

3.      Penn shall not itself, nor through any third party, send any prerecorded messages to any numbers Penn obtains through "skip tracing" or similar means unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls.

4.      Penn shall revise its written TCPA processes, procedures, and training materials.

5.      Penn shall implement regular training for its employees concerning its TCPA processes and procedures.

6.      Penn shall use its best efforts to ensure that all existing and newly hired Penn debt collectors execute an acknowledgement confirming their understanding of Penn's policies and procedures regarding the TCPA.

7.      The Stipulated Injunction will lapse and expire ten (10) years after it is entered by the Court.

8.      Penn will be required to issue quarterly reports to Class Counsel concerning TCPA litigation during the injunctive period.

9.      Penn shall submit proof of compliance with the injunction to Class Counsel by way of providing the training and testing materials used in the training upon the commencement of such training. Furthermore, a declaration of the responsible person at Penn for ensuring compliance with the training requirements of the injunction shall be provided upon completion of the training.

10.     At the end of the Stipulated Injunction, Penn shall submit to Class Counsel a declaration from its training coordinator confirming that training was provided on a regular basis during the injunction term, as required by the Stipulated Injunction. Further, at the end of the Stipulated Injunction, Penn shall also submit to Class Counsel an exemplar of the revised TCPA testing materials to confirm Penn's compliance with the Stipulated Injunction.

     **3.    Class Release**. In exchange for the benefits conferred by the Settlement, all Skip Trace Subclass Members who do not opt out will be deemed to have released any and all claims relating to Penn or anyone on its behalf allegedly calling or sending, without consent, a prerecorded voicemail message sent by VoApps to the individual's cellular voicemail service, including, but not limited to, any claims under the TCPA, or any similar state or federal law. S.A. ¶¶ 1.29, 5.1. All Class Members, including the Non Skip Trace Class Members, will be deemed to have released any claims to

injunctive relief against Defendant relating to the sending or receipt, without consent, of prerecorded voicemail messages sent by VoApps to the individual's cellular voicemail service by or on behalf of Penn, from April 30, 2015, through and including the date of Preliminary Approval. S.A. ¶ 5.2. Non Skip Trace Subclass Members' individual damages claims of any type related to the alleged receipt of prerecorded voicemail messages sent by VoApps to the individual's cellular voicemail service made by or on behalf of Penn on their cellular telephones from April 30, 2015, through and including the date of Preliminary Approval are expressly preserved. S.A. ¶ 5.2. However, Non Skip Trace Subclass Members shall be deemed to have waived the right to participate in any way (as a class representative, class member, etc.) in any class or representative proceeding related to such claims. *Id.*

**4.    The Notice Plan.** The notice plan is designed to provide the best notice practicable. The administrative fees, costs, and expenses of the Settlement Administrator incurred in connection with the notice plan will be paid from the Settlement Fund. *See* S.A. ¶ 1.35.[3]

The Class Notice plan was developed in consultation with the Settlement Administrator is comprised of E-Mail Notice, Social Media Notice, and the Settlement Website. S.A. ¶ 6.2. First, the Settlement Administrator will conduct reverse phone lookup research to identify the names and email addresses associated with the cell phones contained on the Skip Trace Subclass List. S.A. ¶ 6.2(a). Within twenty-eight

---

[3] The Parties seek appointment of American Legal Claim Services, LLC as the Settlement Administrator. S.A. ¶ 1.36.

days following entry of the Preliminary Approval Order, the Settlement Administrator will then cause an E-Mail Notice to be sent to the email addresses associated with the telephone numbers found, substantially in the form provided in Exhibit 4 to the Settlement Agreement. The Settlement Administrator shall perform investigations deemed appropriate by the Settlement Administrator to identify complete and current email address information for each person in the Skip Trace Subclass. The Settlement Administrator shall promptly resend any E-Mail Notice returned as non-deliverable, via additional research, if possible. S.A. ¶ 6.2(b).

The Settlement Administrator will also provide notice via social media and other digital advertising media, as described in the Declaration of Benny Davis, attached as Exhibit 7 to the Settlement Agreement ("Davis Decl."). S.A. ¶ 6.2(c). This additional notice will consist of Facebook Reach and Instagram Ads as well as Google Display Ads. Davis Decl. ¶¶ 6–7.

Finally, the Settlement Administrator will also establish the Settlement Website where Class Members may access to copies of the Complaint, this Agreement with all exhibits referenced herein, Class Notice, including, but not limited to, the Long Form Notice and Claim Form, the Motion for Preliminary Approval, and the Preliminary Approval Order. This website will also be where Skip Trace Subclass Members can file claims, although any Skip Trace Subclass Member will also be able to request a paper copy of a claim form. S.A. ¶ 6.1(d).

Penn, through the Settlement Administrator, will also provide the notification required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the Attorneys General

of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and any other required government officials. *See* S.A. ¶ 6.3.

**5.    Class Representative Service Award.** Class Counsel may seek, and Penn will not oppose, a Service Award of $2,500 for Plaintiff (or in another lesser amount if set by the Court). S.A. ¶ 13.2. Defendant also will not oppose the Court reserving on ruling, or otherwise retaining jurisdiction to consider, payment of a service award pending *en banc* review of *Johnson v. NPAS Sols., LLC*, 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).

**6.    Attorneys' Fees, Costs and Expenses.** Subject to Court approval, Class Counsel will request no more than 30% of the Settlement Fund for their attorneys' fees, in addition to reimbursement of the litigation costs and expenses incurred in this Litigation, which shall be paid from the Settlement Fund subject to approval from the Court. S.A. ¶ 13.1. The Parties negotiated these attorneys' fees, costs and expenses only after reaching agreement on all of the material terms of the Settlement. Yanchunis Decl. ¶ 14. In the event the Court grants preliminary approval of the Settlement, Class Counsel will file a motion seeking fees, costs, and expenses, and a Service Award no later than fifty days after entry of the Preliminary Approval Order.

In addition to seeking preliminary approval of the Settlement, Plaintiff also seeks conditional certification of a nationwide class for purposes of providing the Skip Trace Subclass Members with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard. The Settlement satisfies all criteria for preliminary settlement approval under Eleventh Circuit law and is fair, reasonable and adequate.

## III.   ARGUMENT

### A. Certification of the Settlement Class Is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine that the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004)); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16.  District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

A court in a sister district has stated that "[a] class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'"[4] "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present

---

[4] *Burrows v. Purchasing Power, LLC*, 1:12-CV-22800, 2013 WL 10167232, at *1 (S.D. Fla. Oct. 7, 2013) (quoting *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)).

intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc.*, 521 U.S. at 620. This case meets all of the Rule 23(a) and 23(b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

### 1. The Settlement Class Meets All the Requirements of Rule 23(a).
### a. The Settlement Class Satisfies the Numerosity Requirement.

The first prerequisite to class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). While the exact size of the putative class need not be specified, "'generally less than twenty-one is inadequate, more than forty adequate; with numbers between varying according to other factors.'" *Cox v. Am. Cast. Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice para. 23.05[1] n.7 (1978)).

Here, just the Skip Trace Subclass includes approximately 2 million indiviudals. Yanchunis Decl. ¶ 19. Thus, the numerosity requirement is satisfied.

### b. The Settlement Class Satisfies the Commonality Requirement.

The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve

an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). Commonality presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC,* 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[5]

Here, the commonality requirement of Rule 23(a)(2) is readily satisfied. There are many questions of law and fact common to the Settlement Class that focus on Defendant's common practice of causing RVMs to be delivered to Settlement Class Members on their cellular telephone voicemail platforms. *See Manno*, 289 F.R.D. at 685. Plaintiff initially alleged numerous questions of fact and law common to the Settlement Class, including, among others:

    a.  whether during the class period, Defendant used an artificial or pre-recorded voice in connection with its placement of calls to the cellular telephones of Plaintiff and putative Class Members;

    b.  whether Defendant is subject to the TCPA;

    c.  whether Defendant can show that it obtained prior express consent from Plaintiff and putative Class Members to place calls to their cellular telephones using an ATDS or artificial or pre-recorded voice;

    d.  whether Defendant's conduct violates the TCPA;

    e.  whether Defendant's conduct was negligent;

    f.  whether Defendant's conduct was knowing and/or willful;

    g.  whether Defendant is liable for damages, and the amount of such damages;

---

[5] *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011).

   h.  whether Plaintiff and putative Class Members are entitled to declaratory relief;

   i.  whether Defendant should be enjoined from engaging in conduct in violation of the TCPA in the future; and

   j.  whether Plaintiff and Class Members are entitled to any other remedy.

### c. The Settlement Class Satisfies the Typicality Requirement.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[6] Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, the typicality requirement is satisfied for the same reasons that Plaintiff's claims meet the commonality requirement. Specifically, Plaintiff and Settlement Class Members were each subjected to the same conduct – they all received RVMs sent by VoApps to their cellular voicemail service, by or on behalf of Penn. Plaintiff's claim is typical because he did not consent to receive calls from Penn. Yanchunis Decl. ¶ 21.

### d. The Settlement Class Satisfies the Adequacy Requirement.

---

[6] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

14

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625-26. At the preliminary stage of the approval process, there is nothing to suggest that this requirement has not been satisfied. Plaintiff is a Member of the Settlement Class and he does not possess any interests antagonistic to the Settlement Class. *See* Yanchunis Decl. ¶ 20. In addition, proposed Class Counsel are experienced in class action litigation, including TCPA actions, and have submitted a declaration establishing their skills and experience in handling class litigation around the country and in this District. *See* Yanchunis Decl. ¶¶ 3–7, 22, Exh. 1 thereto. Accordingly, the requirements of Rule 23(a) are met.

### 2. The Proposed Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3).

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 650 (S.D. Fla. 2012). Here, Plaintiff seeks certification under Rule 23(b)(3) for the Skip Trace Subclass Members, which requires that (i) questions of law and fact common to members of the class predominate over any questions affecting only individuals, and that (ii) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or

15

law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004). The Skip Trace Subclass readily meets these requirements.

### a. Common Questions of Law and Fact Predominate.

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes,* 131 S. Ct. at 2551-57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."[7] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all settlement class members of the class in a single adjudication." *Tornes v. Bank of America, NA* (In re Checking Account Overdraft Litig.), 275 F.R.D. 654, 660 (S.D. Fla. 2011). "When 'one or more of the central issues in the action are common to the class

---

[7] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing Klay, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[8]

Common issues readily predominate here because the central liability question in this case — whether Defendant sent or caused to be sent RVMs to Skip Trace Subclass Members' cellular voicemail service — can be established through generalized evidence.[9]

Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.[10]

### b. A Class Action Is Superior.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Skip Trace Subclass. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*,

---

[8] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, pp. 123-124 (3d ed. 2005)).

[9] *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir. 2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

[10] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

Factors the Court may consider are: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class.  As noted earlier, any perceived difficulties managing the Skip Trace Subclass need not be considered in this settlement context. *Amchem*, 521 U.S. at 620. A class action settlement is superior to other means of resolution because a settlement affording Skip Trace Subclass Members an opportunity to receive compensation benefits *all* Parties.

Here, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Skip Trace Subclass Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the resulting in a multiplicity of trials conducted at enormous expense to the judiciary and the litigants.

Moreover, there is no indication that Members of the Skip Trace Subclass have an interest in individual litigation or an incentive to pursue their claims individually, given the small amount of damages likely to be recovered, relative to the resources

required to prosecute such an action.[11] Additionally, the proposed Settlement will give the Parties the benefit of finality.

### 3.  The Class Meets the Requirements Of Rule 23(b)(2).

Under Rule 23(b)(2), certification is appropriate where a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Here, certification of the Settlement Class under Rule 23(b)(2) is appropriate because Penn has acted on grounds that apply generally to all class members via the RVMs they were sent and/or received, and because the Parties have agreed to meaningful injunctive relief that will improve Penn's practices for the benefit of all Class Members. Further, Non Skip Trace Subclass Members only receiving this injunctive relief are expressly free to pursue individual TCPA claims against Penn. As such, this Court should certify the Non Skip Trace Subclass under Rule 23(b)(2).[12]

### B.  Plaintiff's Counsel Should Be Appointed as Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's (1) work in identifying or investigating potential claims, (2)

---

[11] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

[12] *See Northrup v. Innovative Health Ins. Partners, LLC*, 329 F.R.D. 443, 453 (M.D. Fla. 2019) ("The central common issues in this case are whether Defendants used an ATDS to send the text message, and, if so, whether Defendants' actions were willful.").

experience in handling class actions or other complex litigation and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in Class Counsel's Declaration, attached hereto as Exhibit B and its Exhibit 1, proposed Class Counsel have extensive experience prosecuting class actions and other complex litigation. Further, proposed Class Counsel have diligently investigated and prosecuted the claims in this matter, have dedicated substantial resources to the investigation of those claims, and have successfully negotiated the settlement of this matter to the benefit of Plaintiff and the proposed Settlement Class. *Id*. Accordingly, the Court should appoint John Yanchunis, Octavio Gomez, and Patrick A. Barthle II as Class Counsel.

### C. The Settlement Warrants Preliminary Approval.

After determining that a proposed settlement class is appropriate for certification, courts consider whether the proposed settlement itself warrants preliminary approval. Under Rule 23(e), "the Court will approve a class action settlement if it is 'fair, reasonable, and adequate.'" *Burrows*, 2013 WL 10167232, at *5 (quoting Fed. R. Civ. P. 23(e)(2)).

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.[13] Thus,

---

[13] *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the

while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

### 1.   The Settlement Satisfies Amended Rule 23(e)

Rule 23(e)(1) now provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes.  As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member

---

future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  The Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

### a. Adequacy of Representation and Arm's Length Negotiation

As an initial matter, and as explained above, Plaintiff and Class Counsel have adequately represented the Class. *See supra* section III.A.1.d. Moreover, the Settlement was negotiated at arm's length using experienced mediator Judge Thornton. Yanchunis Decl. ¶ 13.[14] Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

### b. Adequacy of Relief

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of his claims, the risks involved in prosecuting a class action through trial cannot be disregarded.  Plaintiff's claims would still need to succeed on a motion for class certification, and likely survive an appeal thereof.

As discussed above, pursuant to the Settlement, Penn will create a Settlement

---

[14] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

Fund of $4,675,000. Each Skip Trace Subclass Member who submits a timely and valid claim form will receive a payment in proportion to their *pro rata* share of the Settlement Fund following payment of Attorneys' Fees and Costs, Settlement Admininstration Expenses, and Service Award (if any). Given the relief offered under the Settlement, Class Counsel believe the results achieved are well within the range of possible approval.

Here, the central legal issues affecting Skip Trace Subclass Members are whether the RVMs constitute calls under the TCPA, whether VoApps was acting as Penn's agent, and, critically, whether Penn obtaining Skip Trace Subclass Members cellular telephone numbers via "skip tracing" or similar techniques broadly establishes that Penn lacked consent to call them.

Conversely, for the Non Skip Trace Subclass, individualized inquiry is a much more significant hurdle so far as determining whether each member consented to such calls. Because the members of that subclass are affected by issues of individual inquiry—namely, whether each consented to the calls at issue—Plaintiff pursued the best available remedy for them: significant and meaningful injunctive relief along with the preservation of their individual claims.

Thus, Plaintiff has struck a reasonable balance of obtaining significant injunctive relief combined with a limited release that preserves the Non Skip Trace Subclass Members' individual damages claims against Penn.[15]

---

[15] *See Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, 2017 WL 4621188, *6 (S.D. Cal. Oct. 16, 2017) (approving TCPA class action settlement with similar injunctive relief); *Schwyhart v. AmSher Collection*

Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in his awareness of the various defenses available to Penn, as well as the risks inherent to continued litigation. Penn consistently denied the allegations raised in the Complaint, and made clear at the outset that it would vigorously defend this case through trial as needed, including contesting class certification issues of individualized consent issues.

Additionally, Penn is a small business of limited net worth and does not have the resources to fund a larger settlement. Penn possesses limited applicable insurance – the policy limits of which are being *fully exhausted* between the establishment of the Settlement Fund and the payment of legal fees and costs. To be clear, Penn has put everything available on the table in this Settlement. Anything more would likely result in Penn's seeking relief under the United States Bankruptcy Code. Thus, financial realities dictate that a larger pool of available financial resources following trial would be highly unlikely.[16] Yanchunis Decl. ¶ 19. Given the risks of proceeding and the limited available award, obtaining significant injunctive relief while maintaining the

---

*Servs., Inc.*, 2017 WL 1034201, *1 (N.D. Ala. Mar. 16, 2017) (approving damages and injunctive subclasses in TCPA settlement); *Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 11508671, *3 (S.D. Cal. Sept. 10, 2008) ("The Court also preliminarily approves the Stipulated Injunction"); *see also Fresco v. Auto. Directions, Inc.*, 03-CIV-61063-MARTINE, 2009 WL 9054828, at *5–6, 20 (S.D. Fla. Jan. 20, 2009) (approving Rule 23(b)(2) settlement class wherein class members released future use of the "class action procedural device" and any individual claims for statutory damages under the Driver's Protection Privacy Act ("DPPA"), but retained the right "to file individual lawsuits under the DPPA or DPPA State Equivalents for actual monetary damages").

[16] *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 508 (W.D. Pa. 2003) ("Under these circumstances, even if the Class were to proceed to trial successfully against Rent-Way, it is highly doubtful that the Class would be able to secure a better recovery than that provided by the proposed Settlement. This factor therefore strongly favors approval of the proposed Settlement."); *In re AmeriSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("The Defendants' inability to withstand greater judgment militates in favor of settlement.").

Non Skip Trace Subclass Members' rights to proceed with individual lawsuits is fair, balanced, and reasonable.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy to understand claim form. S.A. ¶ 3.7. Payments for approved claims will be distributed no later than sixty days after the Effective Date. S.A. ¶¶ 3.7, 1.16.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on the Class relief. Yanchunis Decl. ¶ 14. Plaintiff will seek attorneys' fees of up to thirty percent (30%) of the Settlement Fund, plus any reasonable out-of-pocket costs and litigation expenses incurred by Class Counsel. Attorneys' fees, costs, and expenses, in whatever amount set by the Court, are to be paid as soon as possible after the Effective Date. S.A. ¶ 13.1.

The Parties have agreed to maximum number of exclusions, above which Defendant may elect to terminate this agreement. S.A. ¶ 9.1(f).

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed.  Subsection (C) of Rule 23(e)(2) is therefore met.

### c.  The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably relative to one another because all Skip Trace Subclass Members are eligible for compensation following submission of a claim

form, and Non Skip Trace Subclass Members obtain valuable injuctive relief while mainting their right to pursue individual monetary recovery, if they so choose.

### 2. The Settlement Satisfies Historic Preliminary Approval Factors

The historical procedure for review of a proposed class action settlement is a well-established two-step process.  ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38–39 (4th ed. 2002).  The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."[17] "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010).  Moreover, settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.[18]

Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained above, the process used to reach the Settlement was exceedingly fair and overseen by an experienced neutral. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in these cases.

As discussed above, the relief provided by the Settlement is significant,

---

[17] *Id.* (quoting MANUAL FOR COMPLEX LITIG., §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).

[18] *See* MANUAL FOR COMPLEX LITIG. at §30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

especially considering the risks and delay further litigation would entail and Penn's financial position. Thus, the Settlement is due to be preliminarily approved.

### D.  The Form and Method of Class Notice Satisfy Rule 23.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPL. LITIG. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action."[19]

The notice plan here satisfies all of these criteria and is designed to provide the best notice practicable. Foremost, the language of the notice is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the case, class certification (for settlement purposes), the terms of the Settlement, Class Counsel's motion for attorneys' fees, costs and expenses, and the Class

---

[19] *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* MANUAL FOR COMPL. LITIG., § 21.312 (listing relevant information).

Representative's service award, Skip Trace Subclass Members' rights to opt-out of or object to the Settlement, as well as the other information required by Rule 23(c)(2)(B).

Additionally, the notice plan includes direct E-Mail Notice to Skip Trace Subclass Members, as well as notice via social media and the Settlement Website. Thus, the proposed publication is the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B) ("The notice may be by . . . electronic means, or other appropriate means.").

The Proposed Order Preliminarily Approving Class Action Settlement, attached to the Settlement as its Exhibit 5, has been drafted and approved by counsel for Plaintiff and Penn. The proposed form of notice, attached to the Settlement as its Exhibits 3 and 4, satisfies all of the criteria above. Finally, Penn will provide the notification required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and any other required government officials.

Therefore, the notice and notice plan satisfy all applicable requirements of the law, including, but not limited to, Rule 23 of the Federal Rules of Civil Procedure and applicable Due Process. The Court should therefore approve the notice plan and the form and content of the notice attached to the Settlement as Exhibits 3 and 4.

### E.  The Court Should Schedule a Final Approval Hearing.

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement. The Court will determine at or after the Final

Approval Hearing whether the Settlement should be approved; whether to enter the Final Judgment and Order of Dismissal with Prejudice under Rule 23(e); and whether to approve Class Counsel's motion for attorneys' fees, costs and expenses, and request for a service award for the Class Representative. Plaintiff and Class Counsel request that the Court schedule the Final Approval Hearing at a date convenient for the Court, and in compliance with the provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Plaintiff and Class Counsel will file the motion for final approval and motion for attorneys' fees, costs and expenses, and request for a service award no more than 50 days after Preliminary Approval.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter an order: (1) certifying, for settlement purposes, the proposed Settlement Class and Subclasses, pursuant to Rules 23(a), (b)(2), (b)(3) and (e) of the Federal Rules of Civil Procedure; (2) granting Preliminary Approval of the Settlement; (3) approving the notice plan set forth in the Settlement and the form and content of the notice attached as Exhibits 3 and 4 thereto, and appointing American Legal Claim Services, LLC as the Settlement Administrator; (4) approving and ordering the opt-out and objection procedures set forth in the Settlement; (5) appointing Plaintiff Terrance Guidry as Class Representative; (6) appointing John A. Yanchunis, Octavio Gomez, and Patrick A. Barthle II of Morgan & Morgan as Class Counsel; and (7) scheduling a Final Approval Hearing at a date convenient for the Court, and in compliance with the provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. A Proposed

Order Preliminarily Approving Class Settlement is attached as Exhibit 5 to the Settlement Agreement.

Dated: March 30, 2021                    Respectfully submitted,

                                                    **MORGAN & MORGAN**
                                                    **COMPLEX LITIGATION GROUP**

                                                    */s/ John A. Yanchunis*
                                                    John A. Yanchunis
                                                    Patrick A. Barthle II
                                                    Octavio Gomez
                                                    201 North Franklin Street, 7th Floor
                                                    Tampa, Florida  33602
                                                    Telephone:  (813) 223-5505
                                                    Facsimile:  (813) 223-5402
                                                    jyanchunis@forthepeople.com
                                                    pbarthle@forthepeople.com

                                                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 30, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all attorneys of record in this matter.

                                                    */s/ John A. Yanchunis*
                                                    John A. Yanchunis