# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

TERRANCE GUIDRY, individually and on
behalf of all others similarly situated,

      *Plaintiff,*

      Case No.: 6:16-cv-1936-Orl-41LRH

v.

PENN CREDIT CORPORATION,

      *Defendant*

## CLASS ACTION SETTLEMENT AGREEMENT

This class action settlement agreement ("Agreement" or "Settlement Agreement") is entered into as of March 29, 2021, by and among Terrance Guidry ("Plaintiff"), individually and on behalf of the "Settlement Class Members" (as defined below), and Penn Credit Corporation ("Defendant" or "Penn"). This Settlement Agreement is intended by Defendant and Plaintiff, on behalf of himself and the Settlement Class Members, (collectively, the "Parties") to fully, finally, and forever resolve, discharge, and settle this "Action" (as defined below) and the "Released Claims" (as defined below) of Plaintiff and the Settlement Class Members, upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

A.     On July 31, 2019, Plaintiff filed a class action complaint (the "Complaint") against Penn, asserting claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Specifically, Plaintiff alleged Penn violated the TCPA by making cellular telephone calls using an automatic telephone dialing system or artificial or pre-



recorded voice to Plaintiff and members of the putative class to which they did not consent.

B.      Plaintiff asserted two counts against Penn under the TCPA. First, Plaintiff alleged Penn committed negligent violations of the TCPA. For this first count, Plaintiff sought $500 per violation under 47 U.S.C. § 227(b)(3)(B) and injunctive relief.

C.      Second, Plaintiff alleged Penn committed knowing and/or willful violations of the TCPA. For this second count, Plaintiff sought $1,500 per violation under 47 U.S.C. § 227(b)(3)(B) and injunctive relief.

D.      Plaintiff also alleged that the Court had federal question jurisdiction because his claims arose from alleged violations of the TCPA, which is a law of the United States, as well as under 28 U.S.C. § 1332(d), per the Class Action Fairness Act ("CAFA"), because the aggregate amount of the class claims alleged exceeded $5 million.

E.      Penn filed responsive pleadings and denied any and all liability asserted in the Complaint.

F.      This Action has been actively litigated. The Parties extensively investigated the facts and issues related to the allegations asserted in the Action.

G.      In an attempt to settle the Action, the Parties participated in extensive, good faith, arm's-length settlement negotiations before retired-Judge John Thornton, an experienced and well-regarded mediator chosen by the Parties. The Parties held separate meetings with the mediator and submitted detailed mediation submissions to Judge Thornton setting forth their respective views as to the strengths of their respective cases.

2

TSP

On December 22, 2020, the Parties participated in a full-day mediation session with Judge Thornton and reached a settlement.

H.      Based on their investigatory efforts and the information available to them, the Parties were well versed in the underlying facts and the law, and they had sufficient information to negotiate the terms of this Settlement Agreement.

I.      Plaintiff believes that the claims asserted in the Action have merit.

J.      Defendant denied and continues to deny Plaintiff's allegations in the Complaint and maintains that it complied with the TCPA and all applicable laws. Defendant further maintains that if this Action were to be litigated, the Action would not be appropriate for class treatment.

K.      The Parties are entering into this Agreement to avoid the expense, time, and risk associated with the continued pursuit of the claims, as well as the defense of the Action through dispositive motions, class certification, trial, and any subsequent appeals. The Parties and their respective counsel have considered the uncertainty, difficulty, and delays inherent in litigation, especially in this complex class action. Therefore, the Parties believe it is desirable that this Action and the Released Claims be fully and finally compromised, settled, and as set forth herein. Plaintiff and Plaintiff's counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate for the Settlement Class Members, and that it is in the best interests of the Settlement Class Members to settle the Released Claims pursuant to the terms and provisions of this Agreement.



3

L.      Neither the fact of Settlement, this Agreement, nor any consideration thereof, nor any actions taken to implement the terms of this Agreement are intended to be, nor may they be, deemed or construed to be an admission or concession of liability or of the validity of any claim or of any point of law or fact based upon, arising out of, relating to, or otherwise in connection with the allegations asserted or that could have been asserted in this Action.

M.      The Parties understand, acknowledge, and agree that the execution of this Settlement Agreement constitutes the settlement and compromise of the disputed allegations, facts, and claims alleged or that could have been alleged in this Action. The Parties further understand, acknowledge, and agree that this Settlement Agreement, including all terms hereof, shall be inadmissible as evidence against any of the Parties in any proceeding whatsoever except any such proceeding to enforce the terms of this Settlement Agreement. The Parties further understand, acknowledge, and agree that this Settlement Agreement is not an admission of wrongdoing or liability on the part of any Party to this Settlement Agreement. The Parties desire and intend to affect a full, complete, and final settlement and resolution of all existing disputes and claims based upon, arising out of, related to, or otherwise in connection with the allegations in this Action, as set forth herein.

IT IS HEREBY STIPULATED AND AGREED by and among the Parties, through their undersigned respective counsel, and in consideration of the benefits flowing from the Settlement Agreement, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with

4

prejudice under the terms and conditions of this Agreement. This Settlement Agreement is subject to final approval by the Court after a hearing or hearings as provided for in this Settlement Agreement. Neither Party admits or concedes any liability or damages based upon, arising out of, related to, or otherwise in connection with the allegations asserted in this Action.

## AGREEMENT

As used in this Agreement and the exhibits attached hereto, the terms set forth below shall have the following meanings. The singular of a term shall include the plural of the term, and the plural of a term shall include the singular of the term. A masculine, feminine, or neuter pronoun shall include each of the other genders.

## 1.   DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1    "**Action**" means the matter of *Guidry v. Penn Credit Corporation*, Civil Action No. 6:19-cv-1936-Orl-41LRH, currently pending in the United States District Court for the Middle District of Florida, Orlando Division.

1.2    "**Agreement**" or "**Settlement Agreement**" means this Class Action Settlement Agreement.

1.3    "**Attorneys' Fees and Costs**" means all fees, costs, and litigation expenses to be awarded to Class Counsel, as per this Settlement Agreement. The Attorneys' Fees and Costs shall be paid exclusively from the Settlement Fund.



5

1.4     **"Benefit Check"** means the negotiable instrument to be sent to the Skip Trace Subclass Members by the Settlement Administrator pursuant to this Settlement Agreement, or other form of paperless payment to Settlement Class Members, including via Zelle, Venmo, PayPal, or the like.  Paper Benefit Checks must be negotiated or will be canceled ninety (90) days after the date each is issued.

1.5     **"CAFA Notice"** means the notice contemplated by the Class Action Fairness Act, 28 U.S.C. § 1715(b), to be provided by the Settlement Administrator pursuant to this Settlement Agreement.

1.6     **"Cash Benefit"** means the cash payment to a Skip Trace Subclass Member from the Settlement Fund pursuant to this Settlement Agreement.

1.7     **"Claim Deadline"** means the post-mark date no later than ninety (90) calendar days after entry of the Preliminary Approval Order, or such other date as may be ordered by the Court.

1.8     **"Claim Form"** means the claim form attached hereto as <u>Exhibit 1</u>, which shall be posted to the Settlement Website, and will be available via mail to Skip Trace Subclass Members.

1.9     **"Class Counsel"** means:

John Yanchunis, Esq.
Octavio Gomez, Esq.
Patrick A. Barthle II, Esq.
MORGAN & MORGAN, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
jyanchunis@forthepeople.com



tgomez@forthepeople.com
pbarthle@forthepeople.com

1.10    **"Class Members"** or **"Settlement Class"** means all persons within the United States that were sent and/or received, without consent, a prerecorded voicemail message sent by VoApps to the individual's cellular voicemail service on behalf of Penn from April 30, 2015 through and including the date the Preliminary Approval Order is entered by the Court.  Excluded from this Settlement Class are: (a) any persons who signed a release of Penn Credit Corporation related to such conduct in exchange for consideration; (b) any officers, directors, or employees, or immediate family members of the officers, directors, or employees, of Penn Credit Corporation or any entity in which Penn Credit Corporation has a controlling interest; (c) any legal counsel or employee of legal counsel for Penn Credit Corporation; and (d) the presiding Judge in the Action, as well as the Judge's staff and their immediate family members. The Settlement Class consists of two subclasses of Class Members – the Skip Trace Subclass Members and the Non Skip Trace Subclass Members (both subclasses defined below).

1.11    **"Class Notice"** means any type of notice that has been or will be provided to the Settlement Class pursuant to this Agreement and any additional notice that might be ordered by the Court, including, but not limited to, the Postcard Notice, Claim Form, and the Long Form Notice.

1.12    **"Class Representative"** or **"Plaintiff"** means Terrance Guidry.

1.13    **"Consent"** as used in the context of Defendant's agreement with respect to abstaining from sending prerecord messages in the future, means "consent" as defined by

7



the Telephone Consumer Protection Act, 47 U.S.C. § 227, and all rules and regulations promulgated thereunder.

    1.14   **"Court"** means the United States District Court for the Middle District of Florida.

    1.15   **"Defendant's Counsel"** means:

Dale Golden, Esq.
Jeff Albinson, Esq.
Golden Scaz Gagain, PLLC
1135 Marbella Plaza Drive
Tampa, FL 33619
Telephone: (813) 251-5500
dgolden@gsgfirm.com
jalbinson@gsgfirm.com

    1.16   **"Effective Date"** means the last date by which all of the following events have occurred: (i) the Court entering the Final Approval Order and Judgment without material change; and (ii) the expiration of thirty-five (35) days following entry of the Final Approval Order and Judgment without any appeal, or, in the instance of an appeal or motion to accept jurisdiction of an appeal of the Final Approval Order and Judgment, entry of an order affirming the Final Approval Order and Judgment without material change or denying jurisdiction of an appeal, and all appeals have been exhausted; and (iii) the Final Approval Order and Judgment has become Final.

    1.17   **"Fee Award"** means the sum of attorneys' fees and reimbursement of costs and litigation expenses awarded by the Court to Class Counsel. The Fee Award shall be paid exclusively from the Settlement Fund.



8

1.18  **"Fee and Cost Motion"** means that written motion by which Plaintiff or Class Counsel request the Court award Attorneys' Fees and Costs.

1.19  **"Final"** means the Final Approval Order and Judgment has been entered in the Action and one (1) business day following the later of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Approval Order and Judgment; (ii) if there is an appeal or appeals of any matter, topic, ruling, order, or issue in the Action, other than an appeal or appeals solely with respect to the Fee Award, the date of final dismissal or completion of such appeal or appeals in a manner that finally affirms and leaves in place the Final Approval Order and Judgment; or (iii) the Court, following the resolution of any appeal or appeals of any matter, topic, ruling, order, or issue in the Action, other than an appeal or appeals solely with respect to the Fee Award, enters a further order or orders approving the Settlement without material modification of the terms set forth herein, and no further appeal is taken from such order(s) or, in the event any further appeal is taken from such order(s), any such appeal results in the affirmation of such order(s). Neither the pendency of the Fee and Cost Motion, nor any appeal pertaining solely to a decision on the Fee and Cost Motion, shall in any way delay or preclude the Final Approval Order and Judgment from becoming Final.

1.20  **"Final Approval Hearing"** means the hearing before the Court, scheduled to take place no sooner than one hundred and thirty (130) days after entry of the Preliminary Approval Order, at which: (i) the Parties shall request and the Court shall consider final approval of the Settlement, final certification of the Settlement Class, and

entry of the Final Approval Order and Judgment; (ii) the Court shall consider any timely objection to this Settlement and all responses thereto; (iii) the Court shall consider the Fee and Cost Motion; and (iv) the Court shall dismiss the Action with prejudice as to Plaintiff and the Skip Trace Subclass and without prejudice as to the Non Skip Trace Subclass.

1.21    **"Final Approval Order and Judgment"** means the Court's final approval of this Settlement Agreement through an order, substantially in the form of Exhibit 2 attached hereto without material change, to be entered by the Court through the entry of an order following the Final Approval Hearing in which the Court grants final approval of this Settlement Agreement, finally certifies the Settlement Class, and authorizes the entry of a final judgment, including a Stipulated Injunction, substantially in the form of Exhibit 6 attached hereto without material change, and dismissal of the Action with prejudice as to Plaintiff and the Skip Trace Subclass and without prejudice as to the Non Skip Trace Subclass. The form of the Final Approval Order and Judgment is a material term of this Settlement Agreement.

1.22    **"Long Form Notice"** means the notice of this Settlement Agreement and Final Approval Hearing, which is to be made available to the Settlement Class in accordance with this Agreement and substantially in the form of Exhibit 3 hereto, or in such similar form as may be ordered by the Court. The Long Form Notice shall be made available on the Settlement Website.  Class Members may also request a paper copy of the Long Form Notice from the Settlement Administrator.



1.23    **"Non Skip Trace Subclass Members"** or **"Non Skip Trace Subclass"** means all persons who are Class Members but are not also Skip Trace Subclass Members.

1.24    **"Objection/Exclusion Deadline"** means the date no later than seventy-five (75) calendar days after entry of the Preliminary Approval Order, or such other date as may be ordered by the Court, by which (i) a written objection to this Settlement Agreement must be filed in the Action, or (ii) a Request for Exclusion must be postmarked. The Objection/Exclusion Deadline shall be included in Class Notice and posted to the Settlement Website described in this Settlement Agreement.

1.25    **"Parties"** means Plaintiff, the Settlement Class Members, and Defendant.

1.26    **"Email Notice"** means the email notice that is to be provided to the Skip Trace Subclass in accordance with this Agreement and substantially in the form of Exhibit 4 hereto, or in such similar form as may be ordered by the Court.

1.27    **"Preliminary Approval Order"** means the Court's preliminary approval of this Settlement through entry of a Court order, substantially in the form of Exhibit 5 attached hereto without material modification, in which the Court: (i) finds the Court has personal and subject matter jurisdiction over the Parties and claims; (ii) preliminarily approves the terms and conditions of this Settlement Agreement as fair and reasonable; (iii) approves the manner and form of Class Notice; (iv) approves of and authorizes the dissemination of Class Notice to the Skip Trace Subclass; (v) directs the manner in which, and deadline by which, Skip Trace Subclass Members may submit a Request for Exclusion; (vi) directs the manner in which and deadline by which Settlement Class

11

Members may object to this Settlement; (vii) appoints the Settlement Administrator; and (viii) schedules a Final Approval Hearing. The Form of the Preliminary Approval Order is a material term of this Settlement Agreement.

1.28   **"Release"** means the releases set forth in Section 5 of this Settlement Agreement.

1.29   **"Released Claims"** means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, known or unknown, whether based on any federal law, state law, common law, territorial law, or foreign law right of action or of any other type (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), which Plaintiff or a Skip Trace Subclass Member has arising out of, based upon, or in any way relating to Penn or anyone on its behalf allegedly calling or sending, without consent, a prerecorded voicemail message sent by VoApps to the individual's cellular voicemail service on behalf of Penn, from April 30, 2015, through and including the date of Preliminary Approval, including, but not limited to, any claims under the TCPA, or any similar state or federal law.

1.30   **"Released Parties"** means Defendant and its respective assigns, heirs, successors, predecessors, parents, subsidiaries, officers, directors, affiliates, shareholders, members, managers, partners, principals, representatives, employees, insurers, attorneys, and agents, and any service providers for Penn Credit Corporation and each of the service providers' respective assigns, heirs, successors, predecessors, parents, subsidiaries,

12



officers, directors, affiliates, shareholders, members, managers, partners, principals, representatives, employees, and agents.

1.31 **"Releasing Parties"** means Plaintiff and each Class Member, and their respective assigns, heirs, successors, predecessors, parents, subsidiaries, officers, directors, shareholders, members, managers, partners, principals, representatives, employees, and any other person acting on their behalf.

1.32 **"Releasing Skip Trace Parties"** means Plaintiff and each Skip Trace Subclass Member, and their respective assigns, heirs, successors, predecessors, parents, subsidiaries, officers, directors, shareholders, members, managers, partners, principals, representatives, employees, and any other person acting on their behalf.

1.33 **"Request for Exclusion"** means the written submission submitted by any person in the Skip Trace Subclass to opt out of the Settlement pursuant to this Settlement Agreement.

1.34 **"Settlement"** means the settlement contemplated by this Agreement, including all exhibits attached hereto.

1.35 **"Settlement Administration Expenses"** means any and all fees, costs, and expenses incurred by the Settlement Administrator, including, but not limited to, such fees, costs, and expenses incurred in disseminating Class Notice and CAFA Notice, publishing Class Notice, creating, administering, maintaining, and hosting the Settlement Website, creating, administering, maintaining, and hosting a toll-free telephone number, disseminating any funds from the Settlement Fund, including but not limited to Benefit

13



Checks and Cash Benefits to Skip Trace Subclass Members.   All Settlement Administration Expenses shall be paid exclusively from the Settlement Fund.

1.36   **"Settlement Administrator"** means American Legal Claim Services, LLC.

1.37   **"Settlement Class Member"** means Plaintiff and any person who is in the Settlement Class and who has not timely submitted a valid Request for Exclusion by the Objection/Exclusion Deadline pursuant to this Settlement Agreement.

1.38   **"Settlement Fund"** means the common fund of Four Million, Six Hundred and Seventy-Five Thousand Dollars ($4,675,000) which will be the total aggregate amount that Defendant shall be obligated to pay pursuant to the terms of this Settlement Agreement. The Settlement Fund shall be used to pay all: (i) Skip Trace Subclass Recovery to Skip Trace Subclass Members; (ii) Attorneys' Fees and Costs; and (iii) Settlement Administration Expenses.

1.39   **"Settlement Website"** means the internet website to be created, operated, maintained, and hosted by the Settlement Administrator pursuant to this Settlement Agreement.

1.40   **"Skip Trace Subclass List"** means the list of phone numbers which has been produced by the Defendant to Class Counsel identifying the phone numbers of the Skip Trace Subclass.

1.41   **"Skip Trace Subclass Members"** or **"Skip Trace Subclass"** means the approximately two million Class Members whose cellular telephone numbers were

14

obtained by Penn via the use of "skip tracing" or similar techniques, as identified on the Skip Trace Subclass List.

1.42 **"Skip Trace Subclass Recovery"** means the amount of the Settlement Fund available for distribution to the Skip Trace Subclass Members, after payment of Attorneys' Fees and Costs and Settlement Administration Expenses.

1.43 **"Stipulated Injunction"** means the stipulated injunction, substantially in the form of Exhibit 6 attached hereto without material change, the Parties will jointly request be entered by the Court when seeking entry of the Final Approval Order and Judgment, as described in this Settlement Agreement.

1.44 **"TCPA"** means the Telephone Consumer Protection Act, 47 U.S.C. § 227, and all rules and regulations promulgated thereunder.

1.45 **"VoApps"** means VoApps, Inc.

## 2.   NO ADMISSION OF LIABILITY OR ELEMENTS OF CLASS CERTIFICATION

2.1 **Defendant's Denial of Wrongdoing or Liability**. Defendant has asserted and continues to assert many defenses in this Action and has expressly denied and continues to deny any fault, wrongdoing, or liability whatsoever based upon, arising out of, relating to, or otherwise in connection with the conduct alleged in the Action. Defendant expressly denied and continues to deny fault, wrongdoing, or liability whatsoever, as well as the validity of each of the claims and prayers for relief asserted in the Action. Defendant expressly acknowledges and agrees that neither the fact of, nor any provision contained in, this Settlement Agreement, nor any of the implementing

15



documents or actions taken under them, nor Defendant's willingness to enter into the Settlement and this Agreement, nor the content or fact of any negotiations, communications, and discussions associated with the Settlement and this Agreement shall constitute or be construed as an admission by or against Defendant or any of the Released Parties of any fault, wrongdoing, violation of law or liability whatsoever, the validity of the claims or allegations in the Action, any infirmity of any defenses asserted by the Defendant in the Action, or that any equipment used by Defendant was an "automated telephone dialing system" under the TCPA.

## 3.   SETTLEMENT RELIEF

3.1   **Settlement Fund.** Defendant agrees to deposit a total amount of Four Million, Six Hundred Seventy-Five Thousand Dollars ($4,675,000) into the Settlement Fund, which Settlement Fund shall be established and maintained by the Settlement Administrator for the benefit of the Settlement Class and Class Counsel. The Settlement Fund is to be established and maintained for the explicit purpose of issuing and/or paying the Skip Trace Subclass Recovery, Benefit Checks, and Cash Benefits with respect to Skip Trace Subclass Members, any award for Attorneys' Fees and Costs to Class Counsel, Settlement Administration Expenses, and any other expenditure authorized by the Court. Defendant shall fund the Settlement Fund within thirty days of the entry of the Final Approval Order.

3.2   All the monies deposited by Defendant into the Settlement Fund shall be placed into an interest-bearing escrow account established and maintained by the Settlement Administrator at a financial institution selected by Class Counsel. The interest

16

generated on the monies deposited by Defendant into the Settlement Fund shall, if any, accrue to the benefit of the Settlement Class and shall be added to the Settlement Fund.

      3.3    **Stipulated Injunction.** In addition to the deposit of the settlement funds described in 3.1, the Parties will jointly request the Stipulated Injunction be entered by the Court when seeking entry of the Final Approval Order and Judgment.  Pursuant to the Stipulated Injunction, Penn agrees to do the following: (1) Penn shall update and improve its processes and procedures concerning compliance with the TCPA; (2) Penn's processes and procedures concerning compliance with the TCPA shall be in writing; (3) Penn shall implement regular training for its employees concerning its TCPA processes and procedures; (4) Penn shall begin to scrub phone numbers placed by clients or otherwise obtained to determine whether the number is a cell phone, and (5) if a scrub determines a phone number is a cell phone, Penn shall not itself, nor through any third party, send any prerecorded messages to the number unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls; and (6) Penn shall not itself, nor through any third party, send any prerecorded messages to any numbers Penn obtains through "skip tracing" or similar means unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls. These obligations shall continue for ten (10) years from the date of entry of the Stipulated Injunction.

      3.4    Pursuant to the Stipulated Injunction, during the ten-year period of the Stipulated Injunction, Penn shall submit proof of compliance with the injunction to Class Counsel by way of providing the training and testing materials used in the training upon

17

the commencement of such training. Furthermore, a declaration of the responsible person at Penn for ensuring compliance with the training requirements of the injunction shall be provided upon completion of the training. Class Counsel shall be provided such other documentation of compliance as they might deem necessary to confirm compliance, upon request, subject to either party seeking review by the Court as to the reasonableness of the request(s). Additionally, Penn will be required to issue quarterly reports to Class Counsel concerning TCPA litigation during the ten-year injunctive period.

3.5     At the end of the ten-year Stipulated Injunction, Penn shall submit to Class Counsel a declaration from its training coordinator confirming that training was provided on a regular basis during the injunction term, as required by ¶¶ 1–5 of the Stipulated Injunction. Further, at the end of the Stipulated Injunction, Penn shall also submit to Class Counsel an exemplar of the revised TCPA testing materials to confirm Penn's compliance with ¶ 4 of the Stipulated Injunction.

3.6     During the ten-year term of the Stipulated Injunction, both Penn and Plaintiff have the right to seek relief from, or modification of, the Stipulated Injunction based upon an unfair burden on the business, or a change in the law. Any request for alteration or modification of the Stipulated Injunction shall be made to the Court. Any alteration or modification of the Stipulated Injunction shall not extend the length of the injunction. Any alteration or modification in the Stipulated Injunction shall only apply prospectively for the remainder of the injunction.

3.7     **Payments From The Settlement Fund**.  Within sixty (60) days after the Effective Date or such other date after the Effective Date as the Court may order, the

Settlement Administrator shall pay from the Settlement Fund the Skip Trace Subclass Recovery to each Skip Trace Subclass Member filing a valid Claim Form pursuant to this Settlement Agreement a pro-rata share of the remaining balance of the Settlement Fund after (a) payment of Attorneys' Fees and Costs to Class Counsel; (b) Service Award, if any, to the Class Representative; and (c) Settlement Administration Expenses. The amounts paid to each valid claimant shall be determined once the total number of valid claims is determined. The Benefit Checks must be negotiated or will be canceled ninety (90) days after the date each is issued.

3.8     If, after all payments are processed, and an amount greater than $50,000 remains in the Settlement Fund after the initial distribution to Skip Trace Subclass Members who filed a valid claim, then the Settlement Administrator shall distribute the remaining Settlement Fund to Skip Trace Subclass Members who cashed their payment checks in the previous round of distribution on a *pro rata* basis after all costs associated with the second distribution are paid from the remaining Settlement Fund.  In no event shall a Class Member receive more than the maximum that he or she could have received under the TCPA for a single call.

3.9     **Cy Pres**.  If there remain funds in the Settlement Fund after all payments have been made to Skip Trace Subclass Members pursuant to sections 3.7 through 3.8, for Attorney's Fees and Costs, and for Settlement Administrative Expenses, the balance shall be paid to *cy pres* recipient as agreed to by the parties and approved by the Court.

4.     **CLAIMS PROCESS AND DETERMINATION FOR ELIGIBILITY FOR COMPENSATION FROM CLASS SETTLEMENT RECOVERY**

TJP

4.1    As described in the Class Notice, any Skip Trace Subclass Member who seeks distribution from the Skip Trace Subclass Recovery as described in this Settlement Agreement must complete, sign, and return a Claim Form to the Settlement Administrator, which Claim Form shall be available on the Settlement Website or by contacting the Settlement Administrator via the Settlement Website, the toll-free number available on the notice, or by mail. The Claim Form must be postmarked before the Claims Deadline and sent to the address stated in the Class Notice. Any Skip Trace Class Member who fails to timely return a completed and signed Claim Form by the Claims Deadline shall not be eligible to participate in any distribution from the Skip Trace Class Recovery as described in this Settlement Agreement. Skip Trace Class Members who timely return a valid completed Claim Form will receive distribution(s) from the Skip Trace Class Recovery as described herein.

4.2    The Settlement Administrator shall review all submitted Claim Forms to determine if such forms were signed, timely postmarked, and otherwise comply with any requirement set forth in this Agreement. The Settlement Administrator shall review all submitted Claim Forms to determine if the submitting person is eligible for distribution from the Skip Trace Subclass Recovery under this Agreement by confirming that the submitting person's identity, cellular telephone number, and/or information is reflected on the Skip Trace Subclass List.  As necessary, the Settlement Administrator may contact such submitting persons to gather additional or omitted information in order to determine their eligibility for distribution(s) from the Skip Trace Subclass Recovery.

## 5.   RELEASES

5.1   **Released Skip Trace Claims**.   Upon the Effective Date, and in consideration of the settlement relief described herein, the Plaintiff and the Releasing Skip Trace Parties fully, finally, and forever settle, release, relinquish, and discharge the Released Parties from the Released Claims, as defined and described herein and including any claims that were or could have been brought in the Action, and are forever barred from asserting any of the Released Claims in any court or forum whatsoever against any of the Released Parties.

5.2   **Injunctive and Class Release**.   Upon the Effective Date, and in consideration of the settlement relief described herein, Plaintiff and the Releasing Parties shall be deemed to have released, and by operation of the Final Approval Order and Judgment shall have fully, finally, and forever, released, relinquished, and discharged any claim to injunctive relief against the Released Parties relating to the sending or receipt, without consent, of prerecorded voicemail messages sent by VoApps to the individual's cellular voicemail service by or on behalf of Penn, from April 30, 2015, through and including the date of Preliminary Approval.   Non Skip Trace Subclass Members' individual damages claims of any type related to the alleged receipt of prerecorded voicemail message sent by VoApps to the individual's cellular voicemail service made by or on behalf of Penn on their cellular telephones from April 30, 2015, through and including the date of Preliminary Approval are expressly preserved; however, the Non Skip Trace Subclass Members shall be deemed to have waived the right to participate in any way (as a class representative, class member, etc.) in any class or representative

proceeding related to claims that they allegedly received prerecorded voicemails made by or on behalf of Penn to their cellular telephone numbers from April 30, 2015, though and including the date of Preliminary Approval in violation of the TCPA.

**6.     NOTICE TO THE CLASS**

6.1     Upon entry of the Preliminary Approval Order, the Settlement Administrator shall cause Class Notice to be disseminated to Skip Trace Subclass Members as provided herein. Such Class Notice shall comport with Rule 23 of the Federal Rules of Civil Procedure.  No direct notice shall be provided to Non Skip Trace Subclass Members.

6.2     Class Notice was developed in consultation with the Settlement Administrator and includes:

a)     *Reverse Phone Lookup.* The Settlement Administrator will conduct research to identify the names and email addresses associated with the cell phones contained on the Skip Trace Subclass List.

b)     *E-Mailed Notice.* Subject to the approval of the Court, within twenty-eight (28) calendar days following entry of the Preliminary Approval Order, the Settlement Administrator shall cause an E-Mail Notice to be sent to the email addresses associated with the telephone numbers of the Skip Trace Subclass Members as reflected in the Skip Trace Subclass List, substantially in the form provided in Exhibit 4 hereto. The Settlement Administrator shall perform

investigations deemed appropriate by the Settlement Administrator to identify complete and current email address information for each person in the Skip Trace Subclass. The Settlement Administrator shall promptly resend any E-Mail Notice returned as non-deliverable, via additional research, if possible. All costs associated with the E-Mail Notice, including, but not limited to, all costs of research, email address determination and confirmation, data searches, and printing, publishing, mailing, and re-mailing shall be paid from the Class Settlement Fund.

c)      *Social Media Notice*. The Settlement Administrator shall also provide notice via social media and other digital advertising media, as further described in the Declaration of the Settlement Administrator, attached hereto as Exhibit 7.

d)      *Settlement Website.* Following entry of the Preliminary Approval Order, but prior to the date of the mailing of the E-Mail Notice pursuant to this Settlement Agreement, the Settlement Administrator shall create, maintain, operate, and host a dedicated Settlement Website to assist in the administration of this Settlement. The Settlement Website shall provide Class Members access to copies of the Complaint, this Agreement with all exhibits referenced herein, Class Notice, including, but not limited to, the Long Form Notice and Claim Form, the Motion for Preliminary Approval, and

23

the Preliminary Approval Order. All costs associated with the creation, operation, maintenance, and hosting of the Settlement Website, including the preparation of all documents provided therein, shall be considered Settlement Administration Expenses to be paid out of the Settlement Fund. This website will also be where Skip Trace Subclass Members can file claims, although any Skip Trace Subclass Member will also be able to request a paper copy of a claim form.

e)      *Toll-Free Telephone Number.* The Settlement Administrator shall establish a toll-free telephone number with IVR to provide general information about the Settlement. The toll-free telephone number shall be active beginning on the date on which the transmittal of Class Notice commences until 90 days after the distribution of Benefit Checks.

f)          *Supplemental Notice.* The Settlement Administrator shall assist in any supplemental notice for the Settlement Agreement ordered by the Court, or otherwise agreed to by the Parties.

6.3     **CAFA Notice**. Defendant's Counsel, through the Settlement Administrator, shall be responsible for serving the required CAFA Notice(s) within ten (10) calendar days after filing the motion seeking the Preliminary Approval Order. Defendant's Counsel shall take all steps to ensure the Settlement Administrator has contracted in



writing to retain such documents and records in accordance with this Settlement Agreement.

6.4     **Declaration of Compliance**. The Settlement Administrator shall prepare and execute a declaration attesting to compliance with the Class Notice requirements of this Agreement and the Preliminary Approval Order. Such declaration shall be provided to Class Counsel and Defendant's Counsel and filed with the Court no later than ten (10) calendar days prior to the Final Approval Hearing.

7.     **SETTLEMENT ADMINISTRATION**

7.1     The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by completing its duties in a rational, reasonable, responsive, cost effective, and timely manner. The Settlement Administrator shall maintain reasonably detailed records of its activities under the Settlement and this Agreement. The Settlement Administrator shall maintain all such records as are required by the Court and applicable law in accordance with its normal business practices, including, but not limited to, a summary of work performed by the Settlement Administrator, including an accounting of all amounts paid from the Settlement Fund to Skip Trace Subclass Members. Such records shall be provided to Class Counsel and Defendant's Counsel upon reasonable request. Without limiting the foregoing, the Settlement Administrator shall receive objections and Requests for Exclusion forms, and upon such receipt shall promptly provide copies of such objections and Requests for Exclusion forms to Class Counsel and Defendant's Counsel.



7.2     The Settlement Administrator shall be responsible for all matters relating to the administration of this Settlement, including, but not limited to:

a)      Performing Reverse Phone Lookup to identify the names and email addresses associated with the cell phones contained on the Skip Trace Subclass List;

b)      Preparing and completing Class Notice;

c)      Obtaining email address information for Skip Trace Subclass Members, including alternate email or other addresses for any returned Class Notice, Benefit Checks, or any other documents;

d)      Creating, operating, maintaining, and hosting a Settlement Website, from which Settlement Class Members can access copies of the Complaint, this Agreement, Class Notice, the Preliminary Approval Order, and other pertinent documents, materials, and information about this Settlement;

e)      Acting as a liaison between Settlement Class Members and the Parties;

f)      Issuing and mailing (or otherwise distributing) the Benefit Checks;

g)      Preparing and sending all notices required under CAFA;

h)      Preparing and providing a declaration to Class Counsel and Defendant's Counsel prior to the submission of the Plaintiff's Motion for Final Approval of the Class Action Settlement:

26



(i) attesting to its compliance with the provisions of this Settlement Agreement concerning Class Notice; and (ii) listing each Skip Trace Subclass Member who timely and validly submitted a Request for Exclusion opting out of the Settlement as described in Section 12 of this Settlement Agreement;

i)      Maintaining a toll-free number with IVR (interactive voice recognition) service;

j)      Assisting in providing any supplemental notice; and

k)      Performing any other tasks reasonably required to effectuate the Settlement and this Agreement, including, but not limited to, all responsibilities, obligations, and tasks referenced in any Section of this Agreement.

7.3     In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member as it relates to the Settlement.

## 8.    EFFECTIVE DATE

8.1     The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events has occurred and shall be the date upon which the last (in time) of the following events occurs:

a)      This Agreement has been signed by Defendant, Class Counsel, and Defendant's Counsel;

b)      The Court has entered the Preliminary Approval Order;

27



    c)    The Court has entered the Final Approval Order and Judgment, following Class Notice, as provided in the Preliminary Approval Order, and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure;

    d)    The expiration of thirty-five (35) days following entry of the Final Approval Order and Judgment without any appeal, or, in the instance of an appeal or motion to accept jurisdiction of an appeal of the Final Approval Order and Judgment, entry of an order affirming the Final Approval Order and Judgment without material change or denying jurisdiction of an appeal, and all appeals have been exhausted; and

    e)    The Final Approval Order and Judgment has become Final, as defined in this Settlement Agreement.

## 9.   TERMINATION OF SETTLEMENT

9.1   The Parties' willingness to enter into this Agreement and to agree to the certification of a conditional settlement class is dependent upon achieving finality in this Action and avoiding the uncertainties, risks, costs, and delays associated with this Action. Accordingly, the Parties shall each have the unilateral right to terminate this Agreement, declare it null and void, and have no further obligations under this Agreement by providing written notice to the Court and all other Parties hereto within twenty (20) business days of any Party's actual notice of any of the following events:



a)  the Court rejects, materially modifies, materially amends or changes, or declines to issue a Preliminary Approval Order or a Final Approval Order and Judgment with respect to the Settlement;

b)  an appellate court reverses the Final Approval Order and Judgment, and the Settlement is not reinstated without material change by the Court on remand;

c)  any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, the Final Approval Order and Judgment, or this Settlement Agreement in a way that Plaintiff or Defendant reasonably considers material, unless such incorporation, deletion, modification, amendment, or change is accepted in writing by all Parties;

d)  the Effective Date of the Settlement does not occur for any reason;

e)  the Final Approval Order does not become Final;

f)  more than 3% of the individuals who receive direct notice of the Settlement choose to exclude themselves from the proposed Settlement; or

g)  any other ground for termination provided elsewhere in this Settlement Agreement occurs.

29



## 10.    PRELIMINARY APPROVAL ORDER

10.1    **Preliminary Approval Order.** Promptly following the execution of this Agreement, Class Counsel shall submit this Agreement together with all exhibits referenced herein to the Court, and shall apply to the Court, and Defendant's Counsel shall file a notice joining such application or otherwise not opposing such application, for entry of the Preliminary Approval Order in the form of <u>Exhibit 5</u> hereto. The proposed Preliminary Approval Order shall, among other things:

a)    preliminarily approve this Settlement Agreement (subject to the Final Approval Hearing) as fair and reasonable;

b)    certify the Settlement Class for settlement purposes only;

c)    appoint Plaintiff's undersigned counsel as Class Counsel;

d)    appoint Plaintiff as the Class Representative;

e)    appoint American Legal Claim Services, LLC as the Settlement Administrator;

f)    set a schedule for proceedings concerning final approval of this Settlement, including, but not limited to, scheduling a Final Approval Hearing date, which shall be scheduled no earlier than one hundred and thirty (130) days after entry of the Preliminary Approval Order;

g)    approve the manner and form of Class Notice and authorize same for dissemination in accordance with this Agreement;



h)      approve the manner in which and deadline by which persons in the Skip Trace Subclass may submit a Request for Exclusion;

i)      provide, pending entry of a Final Approval Order and Judgment, that the Parties shall cooperate in seeking orders that no person in the Settlement Class shall commence or continue any action, in any capacity, against Defendant or any other Released Parties asserting any of the Released Claims, including but not necessarily limited to *Thomas v. Penn Credit Corporation*, Case No. 19-cv-00823-GAP-EJK (M.D. Fla.); and

j)      provide Defendant has made no admissions of liability or fault in relation to the negotiation or execution of this Settlement Agreement or any document based upon, arising out of, related to, or otherwise in connection therewith.

10.2      The Preliminary Approval Order shall further authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Settlement Agreement and its implementing documents, including, but not limited to, all exhibits hereto, so long as such amendments, modifications, and expansions are consistent in all material respects with the proposed terms of the Final Approval Order and Judgment as set forth in Exhibit 2 to this Settlement Agreement.

TJP

## 11.   FINAL APPROVAL AND JUDGMENT ORDER

11.1   No later than ten (10) calendar days prior to the Final Approval Hearing, the Settlement Administrator shall file with the Court and serve on Defendant's Counsel a declaration as described in this Settlement Agreement.

11.2   Upon all conditions precedent to the Settlement having been satisfied, including, but not limited to, the issuance of the Preliminary Approval Order, not later than ten (10) calendar days prior to the Final Approval Hearing:

a)   All Parties will request, individually or collectively, that the Court enter the Final Approval Order in substantially the form attached as Exhibit 2 hereto;

b)   Class Counsel shall file a memorandum of points and authorities in support of a motion seeking the Final Approval Order and Judgment; and

c)   Class Counsel and/or Defendant's Counsel may file a memorandum addressing any objections submitted regarding the Settlement as described in this Settlement Agreement.

11.3   At the Final Approval Hearing, the Court will consider the proposed Final Approval Order and Judgment, which shall, among other things:

a)   find that the Court has personal jurisdiction over all Settlement Class Members;

b)      find that the Court has subject matter jurisdiction over the Action and the Released Claims such that the Court may approve this Agreement and all exhibits hereto;

c)      find final approval of this Settlement Agreement and the Settlement to be fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members, and that each Settlement Class Member shall be bound by this Settlement Agreement, including the Released Claims and the covenant not to sue as described in Section 5 of this Settlement Agreement, and that this Settlement Agreement should be and is approved;

d)      direct the Parties and their counsel to implement this Agreement according to its terms and provisions;

e)      declare this Agreement to be binding on, and have preclusive effect on, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff, the Settlement Class Members, and the Releasing Parties;

f)      find that the Class Notice as described in this Agreement satisfies the requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and all applicable rules of the Court, constitutes the best practicable notice under the circumstances, constitutes notice that is reasonably calculated to apprise the Settlement Class Members of the pendency

33

TJP

of the Action, their right to object to or exclude themselves from the proposed Settlement, and to appear at the Final Approval Hearing, and is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice of the Settlement.

g)      find that the Class Representative and Class Counsel adequately represented the Settlement Class for purposes of entering and implementing the Agreement;

h)      dismiss the Action, including, without limitation, all Released Claims as provided in this Settlement Agreement;

i)      approve and incorporate the releases described in Section 5 of this Agreement, make such releases effective as of the date of entry of the Final Approval Order and Judgment, and forever discharge the Released Parties from the Released Claims as described in Section 5.1 of this Agreement;

j)      approve and enter the Stipulated Injunction;

k)      without affecting the finality of the Final Approval Order and Judgment, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of this Settlement Agreement and the Stipulated Injunction; and

l)      permanently enjoin each Skip Trace Subclass Member from bringing, joining, or continuing to prosecute any Released Claims against Defendant or any of the Released Parties.

34



m)    Permanently enjoin each Class Member from bringing, joining, or continuing to seek class or injunctive relief as set forth in Section 5.2 against Defendant or any of the Released Parties;

11.4   If the Court refuses to issue the Final Approval Order and Judgment in substantially the same form as Exhibit 2, then the Settlement and this Agreement in its entirety shall become null and void, unless the Parties promptly agree in writing to proceed with the Settlement and this Agreement consistent with the change or modification under which the Settlement and this Agreement is otherwise rendered null and void. In the event the Settlement and this Agreement becomes null and void, the Parties shall be restored without prejudice to their respective litigation positions in the Action prior to execution of this Agreement.

## 12.   OPT-OUTS AND OBJECTIONS

12.1   **Opting Out.** Only Skip Trace Subclass Members are eligible to opt out of the settlement. The Class Notice shall contain information about how Skip Trace Subclass Member may opt-out of the Settlement (*i.e.,* a request to be excluded from the Settlement Class) by mailing a Request for Exclusion by first-class mail, postage prepaid, and postmarked to the address of the Settlement Administrator as specified in the Class Notice. Such Request for Exclusion shall clearly indicate the name, address, telephone number, the name and case number of the Action, a clear and unequivocal statement that the person wishes to be excluded from the Settlement Class, and the signature of such person or, in the case of a Skip Trace Subclass Member who is deceased or incapacitated, the signature of the legally authorized representative of such person. Each written request

for exclusion can only request exclusion for the named individual; mass or class exclusions are not permissible.

12.2     **Objections**. The Class Notice shall contain information about how a person in the Settlement Class may object to the Settlement by filing a written objection with the Court by the Objection/Exclusion Deadline, with a copy served on the Settlement Administrator, at the address provided in the Class Notice, which written objection must contain the following:

a.      the full name, address, telephone number, and personal signature of the objecting Settlement Class Member;

b.      the specific reasons for the objecting Settlement Class Member's objection to the Settlement, and a detailed statement of the factual and legal basis for such objections;

c.      the identity of all witnesses, including the witness's name and address, and a summary of such witness's proposed testimony, who the objecting Settlement Class Member may call to testify at the Final Approval Hearing, and describe and produce copies of all evidence such objecting Settlement Class Member may offer at the Final Approval Hearing; and

d.      a statement whether the objecting Settlement Class Member and/or his/her/its attorney(s) intend to appear at the Final Approval Hearing. Any attorney of an objecting Settlement Class Member who intends to appear at the Final Approval Hearing must enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than the date set by the Court in its Preliminary Approval Order and shall include the full

caption and case number of each previous class action case in which such counsel has represented an objector. If the objecting Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Fairness Hearing, the written objection must include a detailed statement of the specific legal and factual basis for each and every objection and a detailed description of any and all evidence the objecting Settlement Class Member may offer at the Final Fairness Hearing, including copies of any and all exhibits that the objecting Settlement Class Member may introduce at the Final Fairness Hearing.

**13.    CLASS COUNSEL'S FEE AWARD AND COST REIMBURSEMENT; SERVICE AWARD.**

13.1    **Attorneys' Fees and Costs.** On or before fifty (50) days after the Preliminary Approval Order has been entered, Class Counsel shall file with the Court a motion seeking an award of Attorneys' Fees and Costs to be paid exclusively from the Settlement Fund, which Fees and Costs Motion shall be subject to approval by the Court. The Fees and Costs Motion may seek up to thirty percent (30%) of the Settlement Fund, plus any reasonable out-of-pocket costs. Defendant shall not oppose this request, but nothing in this Agreement requires Defendant or Defendant's Counsel to take any affirmative position with respect to such request. The Fee and Cost Motion shall be noticed to be heard at or before the Final Approval Hearing. The Settlement Administrator shall disburse any Award of Attorneys' Fees and Costs, including any out-of-pocket costs incurred by Class Counsel in this Action, to Class Counsel as soon as possible after the Effective Date.



13.2    **Service Award**. The Fee and Cost Motion may also seek a Service Award on behalf Plaintiff of up to $2,500. Defendant will not oppose Class Counsel's request for a service award of up to $2,500. Such Service Award shall be paid out of the Settlement Fund. If necessary, Defendant also will not oppose the Court reserving on ruling, or otherwise retaining jurisdiction to consider, payment of a service award pending *en banc* review of *Johnson v. NPAS Sols., LLC*, 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).

## 14.    MISCELLANEOUS PROVISIONS

14.1    The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise reasonable efforts to accomplish the foregoing terms and conditions of this Agreement. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order, the Settlement Agreement, and the Final Approval Order and Judgment, and to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

14.2    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff and the Settlement Class, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand, as set forth herein.



14.3    The Parties have relied upon the advice and representation of their respective counsel concerning their respective legal liability for the claims hereby released. The Parties have read and understand fully the above and foregoing Agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

14.4    Unless the context of this Agreement requires otherwise, the plural includes the singular, the singular includes the plural, and "including" has the inclusive meaning of "including without limitation." The words "hereof," "herein," "hereby," "hereunder," and other similar terms of this Agreement refer to this Agreement as a whole and not exclusively to any particular provision of this Agreement. All pronouns and any variations thereof will be deemed to refer to masculine, feminine, or neuter, singular, or plural, as the identity of the person or persons may require.

14.5    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

14.6    Except as otherwise provided herein, each Party shall bear its own costs and attorneys' fees.

14.7    Each counsel or other Party executing this Settlement Agreement, any of its exhibits, or any related settlement documents on behalf of any Party hereto hereby warrants and represents that such Party has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

39

14.8    This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or scanned and e-mailed signatures shall be treated as original signatures and shall be binding.

14.9    This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, representatives, and assigns of the Parties, the Settlement Class Members, and the Released Parties.

14.10   This Agreement, the exhibits hereto, and the terms and conditions herein constitute the entire agreement between the Parties. No representations, warranties, or inducements have been made to any of the Parties, other than those representations, warranties, and inducements contained in this Agreement.

14.11   This Agreement shall be governed by the laws of the United States and, to the extent there is no applicable federal law, the laws of the state of Florida.

14.12   This Agreement may not be amended, modified, altered, or otherwise changed in any manner, except by a writing signed by all of the Parties and approved by the Court.

14.13   Unless otherwise stated herein, any notice to the Parties required or provided under this Agreement shall be in writing and may be sent by electronic mail, overnight delivery by a national recognized courier service (*i.e.,* UPS, FedEx, or the equivalent), or hand delivery as follows:

      a.      If to Class Counsel:

John Yanchunis, Esq.

Octavio Gomez, Esq.
Patrick A. Barthle II, Esq.
MORGAN & MORGAN, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
jyanchunis@forthepeople.com
tgomez@forthepeople.com
pbarthle@forthepeople.com

    b.  If to Defendant's Counsel:

Dale Golden Esq.
1135 Marbella Plaza Drive
Tampa, FL 33619
Telephone: (813) 251-5500
dgolden@gsgfirm.com

   14.14 This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties with the aid of a neutral mediator. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

   14.15 The Court shall retain exclusive and continuing jurisdiction over this Agreement and over all Parties and Settlement Class Members to interpret, effectuate, enforce, and implement this Agreement. The Court shall have exclusive jurisdiction to resolve any disputes involving this Agreement.

   14.16 No Party will make public statements about the Settlement (including specifically the amount of the Settlement), except to the extent contained in materials available to the public in the Court's files.



IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed.

Dated: March 31, 2021

**PENN CREDIT CORPORATION**

By (signature): _____

Name (printed): Thomas Perrotta

Its (title): Compliance Manager

Dated: 3/31/21

**GOLDEN SCAZ GAGAIN, PLLC**
**DEFENDANT'S COUNSEL**

By (signature): _____

Name (printed): Dale T. Golden

Its (title): Defendant's Counsel

Dated: April 1, 2021

**MORGAN & MORGAN, PA**
**PLAINTIFF'S AND CLASS COUNSEL**

By (signature): _____

Name (printed): John A. Yanchunis

Its (title): Partner

42