**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TERRANCE GUIDRY,

       Plaintiff,

                         CASE NO.: 6:19-cv-1936-Orl-41LRH

v.

PENN CREDIT CORPORATION,

       Defendant.

_____/

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS, AND EXPENSES**
**AND SERVICE AWARD AND MEMORANDUM OF LAW IN SUPPORT**

In accord with Eleventh Circuit precedent, Plaintff seeks attorney's fees of 30% of the Settlement Fund[1]—or $1,402,500—as well as costs and expenses of $38,817.38. Plaintiff also requests that the Court reserve on ruling whether Settlement Class Representative Terrance Gruidry ("Plaintff" or "Class Representative") may receive a Service Award of $2,500, reflecting his commitment to this case, pending the *en banc* review of *Johnson v. NPAS Sols., LLC*, 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).

The requested relief is demonstrably reasonable and appropriate and amply supported by the record.[2] The Settlement expressly reflects the Parties' arms-length

---

[1] Unless otherwise noted, all capitalized terms are defined in the Class Action Settlement Agreement ("Settlement" or "S.A."), previously filed at Doc. 57-1.

[2] Plaintiff specifically incorporates by this reference Plaintiff's Motion for Preliminary Approval (including attachments and declarations) ("Preliminary Approval Motion"), (Doc. 55), and the Joint Response to Court's Order Regarding Motion for Preliminary Approval ("Joint Response") (Doc. 59).

and separately negotiated agreement to the relief sought. This factor alone merits great weight and consideration by the Court in ruling on this motion. Further, Plaintiff seeks a fee award that is reasonable under the controlling "percentage of the benefit" fee-assessment method adopted by the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991).[3] Plaintiff also seeks a cost and expense reimbursement of $38,817.38, comprising out-of-pocket costs and expenses reasonably advanced by Plaintiff's Counsel in prosecuting this action—and the parallel *Thomas/Gurzi* action (discussed below)—to a final, successful resolution.

Accordingly, Plaintiff, respectfully submits this Motion for Attorneys' Fees, Costs, and Expenses and Service Award and Incorporated Memorandum of Law.

## I.    INTRODUCTION

This case involves alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b), ("TCPA"), which prohibits the use of automatic telephone dialing systems ("ATDS") to call or text cellular telephones unless the caller has the "prior express consent" of the called party to make such calls. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff alleges that Defendant, Penn Credit Corporation ("Defendant" or "Penn"), (together with Plaintff, the "Parties"), violated the TCPA by initiating debt collection calls via ATDS or prerecorded voice to a cellular telephone

---

[3]   Under *Camden 1*, the benefit of the fund analysis controls; the loadstar/multiplier analysis is improper, although some courts use the latter valuation to cross-check the former. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1302 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a loadstar calculation is not proper in common fund cases, we may refer to that figure for comparison."). As discussed infra, the fee request is well supported by the loadstar/multiplier method, should the Court choose to reference it as a cross-check to the percentage of the benefit calculation.

number, and the recipient did not consent to receive such calls. (Doc. 1).

Penn denies any liability and has asserted substantial defenses, (Doc. 10). Specifically, Penn disputes that the ringless voice mails ("RVMs") at issue violate the TCPA, disputes that VoApps, Inc. ("VoApps") was its agent; contends that Plaintiff's claims are not amenable to class certification; and denies that Plaintiff and class members are entitled to damages or injunctive relief. Moreover, Penn – due to its financial condition and limited available insurance – would be unable to withstand a class-wide judgment requiring it to fully compensate all persons who may have received an RVM during the class period.

Nonetheless, the Settlement provides broad relief for all persons who were sent and/or received RVMs from VoApps on behalf of Penn on the voicemail platform associated with their cellular telephones and requires Penn to institute certain meaningful changes to its business practices to help prevent future such calls to cellular telephones without consent. Further, the Settlement provides for the creation of a Settlement Fund, from which payments will be made to a subclass of the Settlement Class whose cellular telephone numbers were obtained via the use of "skip tracing" or similar techniques (the "Skip Trace Subclass"). Importantly, members of the Settlement Class whose cellular telephone numbers were not so obtained (the "Non Skip Trace Subclass") will *not* release their individual damages claims against Penn.

## II.    BACKGROUND

### A.  Nature of the Claims and Procedural History

#### 1.  *Guidry* Matter

On July 31, 2019, Plaintiff filed a class action Complaint against Defendant in the United States District Court for the Western District of Louisana.  (Doc. 1). The Complaint alleged violations of the TCPA and sought class certification, statutory damages, injunctive relief, and an award of attorneys' fees, costs and expenses on behalf of Plaintiff and the proposed class. (Doc. 1). On August 23, 2019, Defendant filed an Answer and Affirmative Defenses.  (Doc. 10).

On October 1, 2019, Defendant filed a motion to transfer this matter to this Court, (Doc. 17), which was granted, (Doc. 22). On November 26, 2019, the Court entered its Case Management and Scheduling Order No. 1, which established deadlines for class discovery and Plaintiff's Motion for Class Certification.  (Doc. 44).

Plaintiff served written discovery requests, including a Rule 30(b)(6) Deposition Notice, interrogatories, and requests for production of documents, to which Defendant served written responses.  Plaintiff also sought third-party discovery aimed at Defendant's vendor VoApps. Declaration of John Yanchunis, attached hereto as Exhibit A, ¶ 15 (hereinafter "Yanchunis Decl.").

On September 24, 2020, Class Counsel took the deposition of Defendant's corporate representative. On November 10, 2020, Plaintiff took the deposition of third party VoApps, LLC. During this time, Class Counsel was likewise interfacing with an expert regarding identifying and ascertaining the members of the class, in anticipation of the motion for class certification. Yanchunis Decl. ¶ 16.

Subsequently, the Parties began exploring the potential for resolution of Plaintiff's claims on a class-wide basis. These discussions were prompted by the

Parties' desire to avoid the expense, uncertainties, and burden of protracted litigation, and to put to rest any and all claims or causes of action that have been, or could have been, asserted against Defendant arising out of the alleged TCPA violations.

The Parties agreed to Hon. John Thornton (ret.) of JAMS as a mediator. Judge Thornton is well known as a highly skilled and experienced mediator who has mediated many complex and class action cases. On December 22, 2020, the Parties conducted a full-day mediation session to explore settlement. During the mediation, the Parties set forth and discussed their respective positions on the merits of the class claims and the potential for a settlement that would involve class-wide relief. The Parties exchanged offers and counteroffers, and negotiated the points of each vigorously. At all times, the Parties' negotiations were adversarial, non-collusive, and conducted at arm's length. The mediation resulted in the material terms set forth in the Settlement before this Court for consideration.  *See* Yanchunis Decl. ¶¶ 17–18.

### 2. *Thomas/Gurzi* Matter

While this case was ongoing, a parallel case was also proceeding before this Court, *Thomas v. Penn Credit Corp.*, No. 6:19-cv-00823-GAP-EJK (M.D. Fla. filed Apr. 30, 2019) (hereinafter "*Thomas*" or "*Thomas/Gurzi*"). The named plaintiff in that matter, Angela Gurzi—who was later replaced with her bankruptcy estate's trustee, Robert E. Thomas, on December 15, 2020[4]—sought similar redress for prerecorded-voice debt collection calls Penn made.

---

[4] *See Thomas* Doc. 183.

Plaintiff's counsel conducted extensive discovery in the *Thomas/Gurzi* matter, including issuing and responding to first-party written discovery requests; defending Ms. Gurzi and Mr. Thomas during their respective depositions on February 4, 2020, and January 14, 2021; deposing Penn's declarant David King on December 2, 2019; issuing third-party subpoenas to VoApps and multiple cellular carriers; deposing Sprint on December 6, 2019; securing declarations from AT&T and T-Mobile pertinent to class certification issues; and deposing Defendant's Rule 30(b)(6) representative Thomas Perrotta on February 7, 2020. *See* Declaration of Alexander Burke, attached hereto as <u>Exhibit B</u>, at ¶ 18 (hereinafter "Burke Decl."). Discovery in the *Thomas* matter did not come easy: Penn produced the bulk of its responsive materials only after Ms. Gurzi's counsel moved to compel on October 22, 2019. *See Thomas* Doc. 25; Burke Decl. ¶ 16. In addition to reviewing Penn's document production, Ms. Gurzi's counsel processed and analyzed *tens of millions* of rows of data produced by Defendant, VoApps, and Sprint. *See Thomas* Doc. 188-1 & Doc. 101 (at Marovitch Decl.); Burke Decl, ¶ 18.

The *Thomas* proceedings were far along when this settlement was reached. On December 3, 2019, Penn filed an early summary judgment motion on the issue of whether its VoApps messages constituted "calls" under the TCPA. *Thomas* Doc. 35. After full briefing, the Court ruled in Ms. Gurzi's favor. *Gurzi v. Penn Credit, Corp.*, 449 F. Supp. 3d 1294, 1296 (M.D. Fla. 2020). On April 9, 2020, Penn moved for leave to file an interlocutory appeal of the Court's ruling, which the Court denied after full

briefing. *Gurzi v. Penn Credit, Corp.*, 2020 WL 3288016 (M.D. Fla. June 18, 2020). Plaintiff's counsel didn't let up after this victory: On April 24, 2020, they moved to dedesignate as confidential a memorandum from a Penn attorney, which warned Penn before the class period that whether VoApps messages were "calls" under the TCPA would likely fall in consumers' favor. *Thomas* Doc. 72. The Court granted that motion on May 5, 2020. *Thomas* Doc. 80. Plaintiff's counsel also successfully defended against Penn's motions to strike Ms. Gurzi's pleadings since her bankruptcy, and for case-ending sanctions in relation to a confidentiality issue. *Thomas* Doc. 108, 109. On June 29, 2020, Ms. Gurzi's counsel moved for class certification, for summary judgment, and to strike the report of Penn's expert, Jan Kostyun. *Thomas* Doc's 116-118. When Penn responded with a new declaration from its expert with additional analysis, Ms. Gurzi's counsel moved to strike that, as well, on August 12, 2020. *Thomas* Doc. 156.

    In response to the Court's order of August 27, 2020, Ms. Gurzi's bankrtupcy trustee, Mr. Thomas, moved to join and amend the complaint to identify himself as a named plaintif, which the Court granted over Penn's objection. *Thomas* Doc's 171, 179, 180. On December 15, 2020, Thomas's counsel filed an amended complaint identifying Thomas as the named plaintiff, to which Penn responded with a motion for judgment on the pleadings on February 26, 2021. *Thomas* Doc's 183, 186. On February 26, 2021, Thomas's counsel submitted conformed and updated versions of the motions for class certification and for summary judgment, and on March 12, 2021, they responded to Penn's motion for judgment on the pleadings. These motions

remained actively pending until the Court stayed these proceedings in light of the instant Settlement. *Thomas* Doc's 188, 189, 193, 201; *see also* Burke Decl. ¶¶ 16–17.

While *Thomas/Gurzi* counsel feel confident that Trustee Thomas would be a satisfactory class representative, he is not participating in this class settlement on behalf of Ms. Gurzi's estate, in order to avoid potential objections or other arguments arising from his special citcumstances as a trustee. Thomas and the estate have thus agreed to step aside and permit Guidry to act as class representative for the settlement.

### 3. Combined Request

If the Settlement is finally approved, the *Thomas* matter will be dismissed by the parties there.  In connection with the Settlement before the Court here, counsel for the plaintiffs in both cases have agreed to seek fees, costs, and expenses, together, in solely this matter, and to split any such fee award 50% to counsel in *Thomas/Gurzi* and 50% to counsel in *Guidry*. This agreement was finalized on or about May 3, 2021, and thus was not reflected in Plaintiff's Motion for Preliminary Approval, filed on April 1, 2021.

Accordingly, herein below, Plaintiff has separately accounted for the lodestar, costs, and expenses incurred by counsel in both cases.

### B.  Summary of the Settlement Terms

The Settlement Class includes:

> all persons within the United States that were sent and/or received, without consent, a prerecorded voicemail message sent by VoApps to the individual's cellular voicemail service on behalf of Penn from April 30, 2015 through and including the date the Preliminary Approval Order is entered by the Court.

S.A. ¶ 1.10.

The Settlement Class consists of two subclasses of Class Members – the Skip Trace Subclass Members and the Non Skip Trace Subclass Members. S.A. ¶ 1.10. The Skip Trace Subclass includes the approximately two million Class Members whose cellular telephone numbers were obtained by Penn via the use of "skip tracing" or similar techniques, as identified on the Skip Trace Subclass List. S.A. ¶ 1.41. The Skip Trace Subclass is a Rule 23(b)(3) opt-out class. Skip Trace Subclass Members are eligible for the monetary relief descrbied below.

The Non Skip Trace Subclass includes all persons who are Class Members but are not also Skip Trace Subclass Members. S.A. ¶ 1.23. The Non Skip Trace Subclass is a Rule 23(b)(2) class, and thus the Parties are not required to provide the right to "opt out" to these class members, nor are the Parties required to provide notice. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011). The Non Skip Trace Subclass Members will receive the benefit of the Stipulated Injunction, described below, but retain their rights to pursue individual actions for damages. S.A. ¶ 5.2.

### 1.  Monetary Relief for the Benefit of the Settlement Class.

The Settlement requires the establishment of a Settlement Fund in the amount of $4,675,000. S.A. ¶ 1.38. The Settlement Fund shall be used to pay all: (i) Skip Trace Subclass claims; (ii) Attorneys' Fees and Costs; and (iii) Settlement Administration Expenses. S.A. ¶ 1.38. Each Skip Trace Subclass Member who submits a timely and valid claim form will receive a payment of the *pro rata* share of the Settlement Fund after (a) payment of Attorneys' Fees and Costs; (b) payment of the Service Award, if any, to the Class Representative; and (c) payment of Settlement Administration

Expenses. Thus, the amounts paid to each valid claimant shall be determined once the

total number of valid claims is determined. S.A. ¶ 3.7.

### 2. Stipulated Injunction.

The Settlement also requires Penn to implement certain changes to its business

practices via the entry of a Stipulated Injunction, pursuant to which:

1.     Penn shall update and improve its processes and procedures concerning compliance with the TCPA.  Such processes and procedures shall include implementation of a scrub of phone numbers placed by clients or otherwise obtained to determine whether the number is a cell phone.

2.     If a scrub determines a phone number is a cell phone, Penn shall not itself, nor through any third party, send any prerecorded messages to the number unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls.

3.     Penn shall not itself, nor through any third party, send any prerecorded messages to any numbers Penn obtains through "skip tracing" or similar means unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls.

4.     Penn shall revise its written TCPA processes, procedures, and training materials.

5.     Penn shall implement regular training for its employees concerning its TCPA processes and procedures.

6.     Penn shall use its best efforts to ensure that all existing and newly hired Penn debt collectors execute an acknowledgement confirming their understanding of Penn's policies and procedures regarding the TCPA.

7.     The Stipulated Injunction will lapse and expire ten (10) years after it is entered by the Court.

8.     Penn will be required to issue quarterly reports to Class Counsel concerning TCPA litigation during the injunctive period.

9.     Penn shall submit proof of compliance with the injunction to Class Counsel by way of providing the training and testing materials used in the training upon the commencement of such training. Furthermore, a declaration of the responsible person at Penn for ensuring compliance with the training requirements of the injunction shall be provided upon completion of the training.

10.    At the end of the Stipulated Injunction, Penn shall submit to Class Counsel a declaration from its training coordinator confirming that training

was provided on a regular basis during the injunction term, as required by the Stipulated Injunction. Further, at the end of the Stipulated Injunction, Penn shall also submit to Class Counsel an exemplar of the revised TCPA testing materials to confirm Penn's compliance with the Stipulated Injunction.

S.A. ¶¶ 3.3–3.6; S.A. Exh. 6.

## III.   ARGUMENT

### A.  The Requested Fee is Reasonable under the Common Fund Doctrine

Courts have long recognized the common fund doctrine, under which attorneys who create a recovery benefitting a group of people may be awarded their fees and costs from the recovery. *See, e.g.*, *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). "It is axiomatic that attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund[.]"[5] In a class case as this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit. *Camden I*, 946 F.2d at 774-75. Courts have a great deal of discretion in choosing the proper percentage. "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Id.* at 774. The court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) and any other "unique" circumstances. *Camden 1* at 775. In *Camden I,* the Eleventh Circuit recognized that a fee award of 50 percent of the benefit is the upper limit; that the

---

[5] *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1200 (S.D. Fla. 2006) (internal quotations and citation omitted); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

majority of fee awards fall between 20 and 30 percent. *Camden I*, 946 F.2d at 774-75. As stated in *Camden I*, 25 percent serves as the default "benchmark."[6]

For purposes of determining fees under the controlling percentage of the benefit fee-assessment method, the total value of the common fund or class benefit, both monetary and nonmonetary relief, are considered. *Camden I*, 946 F.2d at 771. Said differently, non-monetary relief provided to the class is "part of the settlement pie." *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015). Thus, "[w]hen the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund."[7]

Here, the Settlement establishes a Settlement Fund of $4,675,000 to be used to pay all: (i) Skip Trace Subclass claims; (ii) Attorneys' Fees and Costs; and (iii) Settlement Administration Expenses. S.A. ¶ 1.38. Moreover, singifcant, and valuable nonmonetary relief is also provided, specifically, the above described processes, procedures, written material revisions, training, and 10-year reporting requirements Penn has agreed to implement and abide by pursuant to the Settlement. S.A. ¶¶ 3.3–3.6; *see also* (Doc. 57-7) (proposed stipulated injunction).

Yet, Plaintiff seeks a fee award of 30% of the monetary Settlement Fund—or $1,402,500. However, the injunctive relief, although not explicitly valued, has inherent

---

[6] *Id.* at 774-75; *see also In re Friedman's, Inc. Securities Litig.*, 2009 WL 1456698, at *2 (N.D. Ga. May 22, 2009) ("[C]ommon fund cases in district courts in the Eleventh Circuit have awarded fee percentages within a range close to the 30% requested here.").
[7] *In re: Checking Account Overdraft Litig.*, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013); *Marty v. Anheuser-Busch Companies, LLC*, 2015 WL 6391185, at *2 (S.D. Fla. Oct. 22, 2015).

monetary value to the Settlement Class Members and essentially all consumers who interact with Defendant; Defendant agreed to implement the agreed upon actions in order to avoid future violations of the TCPA. Therefore, although not explicitly valued, these measures do have monetary value, which would push the fee award percentage lower than the requested 30%.

### A. The *Camden I* Factors Clearly Support the Requested Fee.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson*, 488 F.2d at 717-19).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). These factors are merely guidelines, and the Eleventh

13

Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)). The *Camden I* factors are discussed below.

### 1. Time and Labor Involved

As recounted above, and as set forth in the supporting declarations of John Yanchunis, Alexander Burke, David Marco, and Larry Smith (attached hereto as Exhibits A–D), Counsel expended significant effort to achieve the settlement for the Class. Class Counsel have litigated this action for over two years, and reached a hard-fought settlement only after mediation. Although the present case was resolved before trial, Class Counsel invested significant time and resources investigating and litigating this action. Specifically, among other work, Class Counsel (1) consulted with Plaintiff throughout the course of this case; (2) investigated his claims; (3) drafted the Complaint; (4) prepared and served discovery on Defendant; (5) reviewed the discovery responses from Defendant; (6) communicated and conferred with Defendant regarding discovery issues; (7) communicated with, and provided documents to, expert to help ascertain class size; (8) attended and conducted deposition of third party VoApps, LLC; (9) attended and conducted the corporate representative deposition of Defendant; (10) attended mediation, where they negotiated a comprehensive class action settlement; (11) drafted and filed a motion for preliminary approval of the settlement and supporting memorandum and exhibits; and (12) drafted and filed this motion for attorneys' fees, costs and expenses and class representative service award. Yanchunis Decl. ¶ 40. *Thomas/Gurzi* counsel heavily litigated that matter. Burke

14

Decl. ¶¶ 16–18; Marco Decl. ¶ 13. The time and labor spent litigating each matter on a class-wide basis supports Class Counsel's fee request. *See, e.g.*, Burke Decl. ¶ 15.

In performing the aforementioned work on behalf of the Class, *Guidry* Class Counsel spent over 239 hours of attorney and other professional time—and *Thomas/Gurzi* counsel spent over 1,162 hours—without any assurance that the commitment of time and effort to this case would result in the payment of any fee. Counsel should be compensated for the substantial time and labor invested to obtain this resolution on behalf of the Class and should not be punished for their persistence in achieving a positive result.

### 2. The Novelty and Difficulty of the Questions Involved Required the Skill of a Highly Talented Team of Attorneys.

This factor strongly favors an award of the fees requested. "Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). That this dispute presents complex issues as outlined above is evidenced by the caliber of lawyers representing the Parties.[8] "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested... In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a

---

[8] *See Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson.*, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).

significant premium." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011).

Here, Class Counsel enjoy a strong reputation in the area of complex and class action litigation. (Doc. 57-9 ¶¶ 3–7, and its Exh. 1); Ex's A–D.  Class Counsel have successfully litigated and settled similar cases across the country, and, in this case, have been challenged by highly experienced and skilled counsel who deployed very substantial resources on Defendant's behalf.  Yanchunis Decl. ¶¶ 6–7; Burke Decl. ¶ 6; Marco Decl. ¶ 8.

### 3.  The Claims Against Defendants Entailed Considerable Risk.

Prosecuting these claims was a significant undertaking. The risks incurred in pursuing the case were great. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam*, 176 F. Supp. 2d at 1336.

Here, the central legal issues affecting Skip Trace Subclass Members are whether the RVMs constitute calls under the TCPA, whether VoApps was acting as Penn's agent, and, critically, whether Penn obtaining Skip Trace Subclass Members cellular telephone numbers via "skip tracing" or similar techniques broadly establishes that Penn lacked consent to call them.

Conversely, for the Non Skip Trace Subclass, individualized inquiry is a much more significant hurdle so far as determining whether each member consented to such calls. Because the members of that subclass are affected by issues of individual inquiry—namely, whether each consented to the calls at issue—Plaintiff pursued the best available remedy for them: significant and meaningful injunctive relief along with the preservation of their individual claims.

Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in his awareness of the various defenses available to Penn, as well as the risks inherent to continued litigation. Penn consistently denied the allegations raised in the Complaint, and made clear at the outset that it would vigorously defend this case through trial as needed, including contesting class certification issues.

Additionally, Penn is a small business of limited net worth and does not have the resources to fund a larger settlement. Penn possesses limited applicable insurance – the policy limits of which are being *fully exhausted* between the establishment of the Settlement Fund and the payment of its own legal fees, costs and expenses. To be clear, Penn has put everything available on the table in this Settlement. Anything more would likely result in Penn's seeking relief under the United States Bankruptcy Code. Thus, financial realities dictate that a larger pool of available financial resources following trial would be highly unlikely.[9] (Doc. 57-9 ¶ 19).

---

[9] *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 508 (W.D. Pa. 2003) ("Under these circumstances, even if the Class were to proceed to trial successfully against Rent-Way, it is highly doubtful that the Class would be able to secure a better recovery than that provided by the proposed Settlement. This factor therefore strongly favors approval of the proposed Settlement."); *In re AmeriSoft Corp. Sec. Litig.*,

Thus, Class Counsel's skill and dogged determination in pursuing this matter has led to a favorable result for the Class, despite the significant risks this matter faced. Accordingly, this factor also militates in favor of awarding the requested fee amount.

### 4. Class Counsel Assumed Substantial Risk in Pursuing this Action on a Pure Contingency Basis, and Were Precluded from Other Employment.

Class Counsel prosecuted this case entirely on a contingent fee basis. Yanchunis Decl. ¶ 38; *see also* Burke Decl. ¶ 14. As such, they assumed a significant risk of nonpayment or underpayment. Numerous cases recognize the importance of this factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees."[10]

As Judge King has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548. Class Counsel spent substantial time litigating this case that they could not spend on other matters. Thus, consideration of this factor also

---

210 F.R.D. 109, 125 (D.N.J. 2002) ("The Defendants' inability to withstand greater judgment militates in favor of settlement.").

[10] *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama State Ed. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

justifies the requested fee.

### 5.  The Fee Requested Comports with Customary Fees Awarded in Similar Cases.

"In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (approving award equal to 30% of common fund). "These percentages are the prevailing market rates throughout the United States." *Id.* An award of 30% is below the upper-benchmark and less than the growing trend in this Circuit of 33 1/3% or above.[11] Likewise, such an award comports with other fee awards in similar cases.[12] Accordingly, Class Counsel's requested fee award of 30% of

---

[11] *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); *Seghroughni v. Advantus Rest, Inc.*, No. 12-2000, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses; *Atkinson v. Wal-Mart Stores, Inc.*, No. 08-691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the maximum $2,020,000 common fund; *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, (Doc. 1557 at 8-10) (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-2152, (Doc. 626 at 7) (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory).

[12] *See, e.g.*, *Med. & Chiropractic Clinic, Inc. v. KMH Cardiology Centres Inc.*, 8:16-CV-644-T-23JSS, 2017 WL 11046397, at *2 (M.D. Fla. Nov. 17, 2017) (awarding 30% fee in TCPA class case); *James v. JPMorgan Chase Bank, N.A.*, 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (approving a 30% fee in TCPA class action); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (awarding 33 1/3 % in TCPA class case); *see also Cooper v. Nelnet, Inc.*, 6:14-CV-314-ORL, 2015 WL 4623700, at *2 (M.D. Fla. July 31, 2015) (awarding 27.78% of the Settlement Fund in TCPA class case that had only been pending for one and a half years).

the Settlement Fund is appropriate.

### 6. The Remaining *Camden I* and Other Factors Favor Approval of The Fee Requested.

The remaining *Camden I* factors also support Class Counsel's fee request. The burdens of this litigation and the results obtained on behalf of Plaintiff and the Class weigh in favor of the fee requested.  The fee request is firmly rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333. "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d at 1368.

In addition, the fact that the Parties negotiated arduously and at length during the mediation session, and that, to date at least, no class member has objected to the Settlement or its provision on attorneys' fees, costs, and expenses, weighs in favor of the fee requested.[13] *See, e.g.*, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) ("The lack of significant objection from the Class supports the reasonableness of the fee request.") (collecting cases); *Gevaerts v. TD Bank*, No. 14-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015).

### B. A Lodestar Analysis Confirms the Reasonableness of the Requested Fee.

Under *Camden I*, use of the lodestar analysis is improper in common fund

---

[13] Plaintiff notes, however, that the deadline for objections is July 23, 2021.  (Doc. 60 at 9).

cases.[14] Still, it has been used as a "cross-check" to the percentage-of-the-fund.[15]

To determine the lodestar amount, the "court must multiply the number of hours reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "After the lodestar is determined . . . the court must next consider the necessity of an adjustment for results obtained." *Id.* at 1302. "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)). "[E]nhancement may be appropriate if there is a risk of non-recovery of a fee in the case," such as in a contingent fee arrangement. *Id.*

The following chart summarizes the time and hourly rates of Class Counsel and their professional staff in this matter:

| Name | Hourly Rate | Hours Billed | Total |
|------|-------------|--------------|-------|
| **MORGAN & MORGAN COMPLEX LITIGATION GROUP** | | | |
| John Yanchunis, Lead Partner | $950 | 34.3 | $32,585.00 |
| Octavio Tav Gomez | $894 | 73.9 | $66,066.60 |

---

[14] *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362-63 (declining to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees . . . without discussing lodestar at all") (internal quotations marks, brackets and emphasis omitted).

[15] *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto*, 513 F. Supp. 2d at 1343 (noting that "[s]ome courts use the lodestar method as a cross-check of the percentage of the fund approach") (citing *In re Sunbeam*, 176 F. Supp. 2d at 1336).

| | | | |
|---|---|---|---|
| Patrick Barthle | $658 | 79.7 | $52,442.60 |
| Michael Braun | $894 | 8.4 | $7,509.60 |
| Jonathan Cohen | $742 | 20.8 | $15,433.60 |
| Kenya Reddy | $894 | 0.4 | $357.60 |
| Lorraine Carreiro, Paralegal | $202 | 2.8 | $565.60 |
| Jennifer Cabezas, Paralegal | $202 | 2.9 | $585.80 |
| Jason Placeres, Paralegal | $202 | 16.1 | $3,525.20 |
| **Total** | | **239.3** | **$179,071.60** |

Yanchunis Decl. ¶ 24.

The following chart summarizes the time and hourly rates of attorneys and the professional staff of the firms in the *Thomas/Gurzi* matter:

| Name | Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| **BURKE LAW OFFICES, LLC** | | | |
| Alexander Burke | $650 | 505.2 | $328,380.00 |
| Daniel J. Marovitch | $425 | 514.3 | $218,577.50 |
| **SubTotal** | | **1,019.5** | **$546,957.50** |
| **SMITHMARCO, P.C.** | | | |
| David M. Marco | $500 | 43 | $21,500.00 |
| Larry P. Smith | $550 | 92.5 | $50,875.00 |
| Paralegal | $145 | 7.5 | $1,087.50 |
| **Total** | | **143** | **$73,462.50** |
| ***Thomas* Matter Totals** | | **1,162.5** | **$620,420.00** |

*See* Burke Decl. ¶ 20; Marco Decl. ¶ 17.

These rates have been approved by various courts across the country, including here in the Middle District of Florida. Yanchunis Decl. ¶ 28; Burke Decl. ¶¶ 20–21; Marco Decl. ¶ 16. Here, in the two years that Counsel have been prosecuting these claims against Defendant, in both *Guidry* and *Thomas/Gurzi*, they have expended over 1,400 hours. Yanchunis Decl. ¶ 24. At their current hourly rates, the lodestar is $799,491.60. *Id.* Of course, as this Court knows, Class Counsel will continue to invest significant time in this matter through the settlement administration process, preparing the motion for final approval, responding to any objections, preparing for and

attending the final approval hearing, and defending the Court's Final Judgment on any subsequent appeals. Yanchunis Decl. ¶ 31. Likewise, the Settlement envisions a 10-year injunction-compliance reporting period, for which Class Counsel is responsible for reviewing, and that aspect of the Settlement will likewise require substantial, additional time over the coming decade. Plaintiff estimates that the resulting additional anticipated lodestar will be approximately $100,500, without considering any potential appeal should there be one. Yanchunis Decl. ¶ 31. That additional anticipated time will only further increase the total loadstar to $899,991.60, thus decreasing the associated multipler to 1.56. Yanchunis Decl. ¶ 39.

Had there been no common fund in the proposed Settlement and attorneys' fees were determined based solely on the lodestar method, Class Counsel would have sought a "multiplier" to apply to their lodestar for reasons earlier discussed, in particular, the result achieved for the Class, the complexity of the dispute and issues Class Counsel had to skillfully address, and the contingent nature of Class Counsel's fee arrangement.[16] This would potentially dwarf the fees requested under the percentage-of-the-fund approach and the proposed Settlement.

### C. Class Counsel's Costs and Expenses Are Reasonable.

In addition to attorneys' fees, Class Counsel seek reimbursement of the costs

---

[16] *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar to "reflect such considerations as (1) the contingent nature of the fee; (2) the risk of the case (*i.e.*, the likelihood of success viewed at the tune of the filing); (3) the quality of representation; and (4) the result achieved," and surveying cases applying multipliers of approximately 4 to 9 times lodestar).

and expenses incurred in prosecuting these cases against Defendant. Since the filing of the case, and as of this filing, Class Counsel incurred expenses of $29,661.35. Yanchunis Decl. ¶ 33. The amount of costs and expenses actually expended and advanced by counsel include: filing and PACER fees, process service, copying and mailing expenses, expenses in connection with the mediation, as well as the costs of the mediation fee. *Id.* ¶ 34. *Thomas/Gurzi* counsel have incurred expenses of $9,156.03. Burke Decl. ¶ 22; Marco Decl. ¶ 20. Accordingly, Plaintiff seeks a total cost and expense reimbursement of $38,817.38.

As this Court can certainly be assured, however, this litigation is not over, and Class Counsel will continue to incur and advance costs through final judgment, and, if necessary, through any appeals. Moreover, with the Settlement's injuctive component, Class Counsel's commitment in this case will require further time and potential expenses over the next 10 years. Yanchunis Decl. ¶ 31. A supplemental declaration of additional lodestar, costs, and expenses will be submitted to the Court prior to the fairness hearing in September. Accordingly, Class Counsel respectfully submit that they are entitled to recover these expenses.

### D. Plaintiff Requests the Court Reserve Ruling on the Service Award.

The Settlement proposes that the Class Representative receive a Service Award of $2,500.00 for his participation in this action and service to the Settlement Class. Plaintiff has worked diligently in service of the Class. Yanchunis Decl. ¶ 41. Mr. Guidry worked hand-in-hand with Plaintiff's Counsel from the start, having many conversations about this case, staying involved in and apprised of litigation strategy

from day one. Mr. Guidry was involved in and approved the settlement terms reached in this case. Yet, the subject of service awards was not raised nor negotiated until after the Parties had reached a settlement of the underlying claims, and the Plaintiff's consent and agreement to the terms of the Settlement was not, nor is it in any way, conditioned on his receipt of a service award. Yanchunis Decl. ¶ 42. Indeed, Mr. Guidry is aware that, under current Eleventh Circuit precedent, he is not able to obtain a service award. *Id*.

Accordingly, Plaintiff requests the Court reserve ruling on the service award issue pending the *en banc* review of *Johnson v. NPAS Sols., LLC*, 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the request for attorney's fees, costs, and expenses in the amounts requested, and reserve ruling on the request for a service award.

Dated:  July 2, 2021                 Respectfully submitted,

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**

*/s/ John A. Yanchunis*
John A. Yanchunis
Patrick A. Barthle II
Octavio Gomez
201 North Franklin Street, 7th Floor
Tampa, Florida  33602
Telephone:  (813) 223-5505
Facsimile:  (813) 223-5402
jyanchunis@forthepeople.com
pbarthle@forthepeople.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 2, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all attorneys of record in this matter.

*/s/ John A. Yanchunis*
John A. Yanchunis