## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

TERRANCE GUIDRY,

      Plaintiff,

                         CASE NO.: 6:19-cv-1936-Orl-41LRH

v.

PENN CREDIT CORPORATION,

      Defendant.

_____/

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

Plaintiff respectfully requests that this Court grant final approval of the Parties' Class Action Settlement Agreement.[1] This Settlement is a solid result for the Class.  At $4,675,000 in available funds, the Settlement offers Skip Trace Subclass Members an amount within the standard range for TCPA class settlements on per claimant basis. Considering the number of claims received, there will be an estimated *pro rata* distribution of between $70.64 and $104.83 per Skip Trace Subclass Member who filed a valid claim. And this was accomplished without any objections and without any exclusions (or opt-outs). *See* Declaration of American Legal Claim Services, ¶¶ 12–14, attached hereto as **Exhibit 1**, (hereinafter "ALCS Decl.").

---

[1] All capitalized terms included in this motion and incorporated memorandum of law are defined within the Settlement Agreement and Release ("Settlement or "S.A."), filed at Doc. 57-1, and its definitions are incorporated by reference as if fully set forth herein.

The Settlement must be measured against the real possibility that Settlement Class Members would have received no compensation whatsoever were the case fully litigated. While Plaintiff believes he would have secured class certification and prevailed at trial, success was not assured. The reaction of the Class reflects this fair, reasonable, and adequate result

The background of the litigation of this case, as well as the terms of the proposed Settlement, are set forth in detail in Plaintiff's Motion for Preliminary Approval. (Doc. 57 at 1–8).[2] To avoid further burdening the Court with duplication of efforts, Plaintiff will not repeat such discussions here.

The Settlement Administrator, American Legal Claim Services, LLC ("ALCS"), implemented the notice campaign contemplated in the Settlement Agreement, including posting an interactive settlement website and setting up an informative toll-free phone tree, sending email notice and follow-up emails notices, and providing notice via social media publication. ALCS Decl. ¶¶ 5–10. Ultimately, a notice reach rate of 89.19% was achieved. ALCS Decl. ¶ 11.

Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement, and grant the separately filed motion for attorneys' fees, costs, and expenses, (Doc. 62), and reserve ruling regarding a service award for Plaintiff.

## II.    ARGUMENT

The new rule 23(e) of the Federal Rules of Civil Procedure calls for front-loaded

---

[2] Pinpoint citations to material on the Court's docket refer to the CM/ECF system's pagination in the upper, righthand corner of the documents.

scrutiny of a proposed settlement so that any issues are identified before notice goes out to the class. That step has already occurred, with the Court closely scrutinizing the Settlement and raising questions thereabout, (Doc. 58), the Parties responding to those concerns, (Doc. 59), and the Court granting preliminary approval, (Doc. 60). With this Motion, Plaintiff respectfully requests the Court to take the second and final step in the process by granting final approval of the Settlement. Final approval is warranted because the Class Notice was effective and satisfied Rule 23 and due process, and because the Settlement is a fair, reasonable, and adequate result for Class Members that was reached through arms-length, adversarial negotiations.

### A. The Notice Plan was Effective and Satisfied Rule 23 and Due Process.

When a class is certified through settlement, due process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice is "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This mandate does not require that every individual class member actually receive direct notice. *See, e.g.*, *CE Design v. Beaty Const., Inc.*, No. 07-cv-3340, 2009 WL 192481, at *10 (N.D. Ill. Jan. 26, 2009) ("The Federal Rules [] require the best notice that is 'practicable' not perfect notice. The word 'practicable' implies that the plaintiff should be afforded some flexibility with respect to providing notice to unknown, potential class members"). In particular, class members who cannot be reached through reasonable effort can be

notified by publication. *Hughes v. Kore of Indiana Enter., Inc.*, 731 F.3d 672, 677 (7th Cir. 2013). Class notice must clearly state in plain, easily understood language the details of the proposed settlement, including the nature of the action, the class definition(s), the claims, and the class members' rights. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) ("We have interpreted Rule 23 to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action,' though the notice need not include 'every material fact' or be 'overly detailed.'  In fact, we have recognized that 'an overly detailed notice' has the potential to 'confuse class members and impermissibly encumber their rights to benefit from the action.'") (quoting *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104–1105 (5th Cir. 1977)).

Here, the Notice satisfied Rule 23 and due process. Consistent with the Preliminary Approval Order, the Notice Plan was implemented by the Settlement Administrator, ALCS. ALCS Decl. ¶ 6. Specifically, following preliminary approval, Defense Counsel provided ALCS with four spreadsheets representing the Skip Trace Subclass. ALCS performed a reverse phone lookup function to identify names and email addresses associated with the telephone numbers during the Class Period. ALCS partnered with a nationally recognized data fusion provider, with decades of experience in the field, to compare the telephone numbers against its leading-edge, proprietary data repository and to locate all respective names and email addresses. Through this process, ALCS was able to match 1,726,823 individuals associated with

the telephone numbers on the spreadsheets and was unable to match any individuals to only 78,212 phone numbers. ALCS Decl. ¶ 3.

On March 17, 2021, ALCS mailed a Notice of Proposed Class Action Settlement Under 28 U.S.C. § 1715 ("CAFA Notice") to the attorneys general of the 50 states plus the territory of Puerto Rico, the Attorney General of the United States, the District of Columbia's Corporate Counsel, the Attorney General for Guam, the Attorney General for American Samoa, the Attorney General for the US Virgin Islands, and the Attorney General for the Northern Mariana Islands via certified mail through the US Postal Service. ALCS is not aware of any inquiries, comments, objections, or otherwise from any of these Attorneys General or Counsel. ALCS Decl. ¶ 4.

On or before June 4, 2021, ALCS established a website at www.penncredittcpaclassaction.com. The site contained a set of frequently asked questions and the long-form Class Notice, allowed for Class Members to view and download the Settlement Agreement, the Parties' operative pleadings and motions relevant to the Settlement, and accepted online claim submissions. There were 71,349 direct clicks to the website, 7,882 indirect clicks from other sites, 5,302 clicks from social media, and 5,781 clicks from organic searches. ALCS Decl. ¶ 6.

On or before June 4, 2021, ALCS established a dedicated toll-free phone number to provide answers to Class Member questions. The toll-free number provided a voice response unit listing of questions and answers to frequently asked questions. As of August 19, 2021, ALCS received 758 phone calls regarding the Settlement.

ALCS Decl. ¶ 7.

On June 4, 2021, ALCS directed the Court approved Email Notice to be sent via email to 1,605,675 email addresses associated with 1,013,827 individuals identified during the phone reverse lookup process. Emails associated with 80,909 of these individuals "bounced back" as undeliverable. Emails associated with 932,918 did not bounce back and were ostensibly delivered. ALCS Decl. ¶ 8.

After completing the initial email efforts, ALCS and the Parties conferred and agreed that a supplemental email campaign should be executed to fortify the email efforts. Therefore, ALCS sent (via email) a follow up message to each individual whose Notice was delivered via email informing them of the Notice campaign. Additionally, ALCS sent a reminder email to each individual whose Notice was delivered via email, reminding them of the deadline to file claims. ALCS Decl. ¶ 8.

As a supplement to the direct notice through email, the Settlement outlined indirect notice means to reach Skip Trace Subclass Members who were not known or reached as part of the email efforts. These efforts incorporated the settlement website, Google Ads, and a social media campaign. The main aspect of this supplemental notice effort was a Facebook ad campaign ("Facebook"). ALCS created two focus groups that were used to serve ads to Facebook users. The user groups used telephone numbers, mailing addresses and other information to identify the target audience to whom ads were presented. One of the focus groups contained information for individuals who were not sent an email notice ("No Email") and the other contained information on those who were also sent an email notice ("Email"). Between these

two groups, more than 1.4 million individuals were reached. This included more than 1.5 million ads being presented to 676,924 individuals from the No Email group. In addition, ALCS launched a Google display ad campaign which reached an additional 836,409 people. ALCS Decl. ¶¶ 9–10.

Ultimately, these combined efforts achieved a combined notice reach-rate of 89.19%, as more specifically demonstrated in the chart below:

| Email Attempted | Email Delivered | Class Members Without Email | Class Members Without Email Served Ad via social media | Class Members with Delivered Email or Ad via social media |
|---|---|---|---|---|
| 1,013,827 | 932,918 | 791,209 | 676,924 | 1,609,842 |
| | 51.68% | | 37.50% | 89.19% |

ALCS Decl. ¶ 11.

## B. Reaction of the Class

The Class Notice informed Skip Trace Subclass Members that in order to qualify for benefits in the settlement they must not opt-out of the Settlement, and they must submit a valid Claim Form. The postmark deadline for valid Claim Forms was August 6, 2021. As of August 19, 2021, ALCS received and processed 38,536 claims submitted by Skip Trace Subclass Members. This represents approximately 2.13% of the Skip Trace phone numbers provided.[3] ALCS continues to review and confer with

---

[3] This claims-rate is consistent with other cases, handled by the settlement administrator here, under the TCPA, as well as consistent with other TCPA settlements in the Eleventh Circuit. *See, e.g.*, *Hossfeld v Compass Bank*, 2:16-cv-02017-ACS (N.D. Ala.) (class size of 58,774, had a valid claims rate of 3.8%); *Mahoney v. TT of Pine Ridge, Inc.*, 17-80029-CIV, 2017 WL 9472860, at *3 (S.D. Fla. Nov. 20, 2017) (granting final approval of TCPA class consisting of 374,399 total members, where 7,267 cash award claims and 363 voucher claims were submitted, a claims rate of 2.03%); *James v. JPMorgan Chase Bank, N.A.*, 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) (finding the administrator had identified 536,197 class members, 24,156 of whom submitted a valid claim,

the Parties regarding the final determination for the claims submitted. Based on the number of claims submitted, ALCS estimates that the per Skip Trace Subclass Member payment will be between $70.64 and $104.83, after accounting for notice and administration costs of $516,086.00 and requested attorneys' fees of $1,402,500, and costs and expenses of $38,817.38. ALCS Decl. ¶ 12.

The Class Notice also informed Class Members that if they wished to object to the Agreement, they must provide a written statement to the Court and serve it upon Counsel for the Parties postmarked by July 23, 2021. As of August 19, 2021, ALCS has not received any objections relating to the Settlement and is not aware of any objections filed with the Court and/or provided to Counsel. ALCS Decl. ¶ 13.

Finally, the Class Notice informed Class Members that they may opt-out from the proposed class action settlement. It further stated that Class Members who wish to exclude themselves must submit a written statement requesting exclusion by July 23, 2021. As of August 19, 2021, no Class Member has filed a Request for Exclusion. ALCS Decl. ¶ 14.

### C. Final Approval of the Settlement Is Warranted.

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986

---

equating to a claims rate of 4.5%); *Cooper v. Nelnet, Inc.*, 6:14-CV-314-ORL, 2015 WL 4623700, at *2 (M.D. Fla. July 31, 2015) (noting that 2,677 claims were submitted, "representing only about 4% of the class members who received direct notice"); *see also Cooper v. Nelnet*, Inc., 6:14-CV-314-ORL-37-DAB, 2015 WL 12839778 (M.D. Fla. Aug. 4, 2015) (granting Final Approval).

(11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson v. EverBank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (quoting *Nelson v. Mead Johnson & Johnson Co.,* 484 Fed. App'x 429, 434 (11th Cir. 2012)).

Amended Rule 23(e)(2) standardizes the factors governing final approval, directing that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

### 1. The Settlement was reached after extensive litigation, discovery, and arm's-length negotiation.

The first two factors under the amended Rule 23(e)(2) are intended to "look" to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note. In determining whether these factors are satisfied, the Court may consider "the nature

and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id*.

As explained in the Preliminary Approval motion, Plaintiff and Class Counsel have adequately represented the Class. (Doc. 57 at 14–15, 19–20, 22).

Moreover, courts begin with a presumption of good faith in the negotiating process. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Wilson*, 2016 WL 457011, at * 6 (quoting *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)). Here, the Settlement is the result of extensive, arm's length negotiations between attorneys experienced in class action litigation, including TCPA class actions. The settlement discussions took place during a full-day mediation. The mediation and subsequent negotiations were facilitated by Judge John Thornton, a highly skilled mediator with substantial experience mediating complex and class action cases. *See* (Doc. 57 at 22); (Doc. 57-9 at ¶ 13); *see also Wilson*, 2016 WL 457011, at *6 (finding involvement of mediator "weighs in favor of approval") (citing *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) ("self-dealing contention" was "belied" by involvement of experienced mediator); *Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7–12 Litig.*, 447 F. Supp. 2d 612, 619–20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process)); *see also Butler v. Am. Cable & Tel., LLC*, No. 09-cv-5336, 2011 WL 2708399, at *8 (N.D. Ill. July 12, 2011) (presence of respected neutral supports finding

of fairness); Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note ("[T]he involvement of a neutral or court affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"). Accordingly, subsections (A) and (B) of Rule 23(e)(2) are met, the Settlement is not a product of fraud or collusion, and should be approved.

> **2. The relief provided by the Settlement is fair, reasonable, and adequate in light of the costs, risks, and delay of trial and appeal.**

The Settlement provides fair, reasonable, and adequate relief to the Settlement Class Members, especially in light of the numerous significant risks if this case had proceeded towards ruling on class certification, dispositive motions, and trial.

In determining whether a settlement is fair, given the potential range of recovery, "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (King, J.), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988); *see also, e.g., Great Neck Capital Appreciation Investment P'ship, L.P. v.*

*PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

Given the number of claims submitted, there will be an estimated *pro rata* distribution of between $70.64 and $104.83, per claimant. ALCS Decl. ¶ 12. This per-claimant benefit compares quite favorably to other TCPA settlements.[4]

This litigation was vigorously contested. Continued litigation would have involved substantial delay and expense, which further counsels in favor of Final

---

[4] *See, e.g., Markos v. Wells Fargo Bank, N.A.*, No. 15-cv-1156 (N.D. Ga.) ($16.4 million for 3,296,755 class members, $4.97 per class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270 (N.D. Ga.) ($30.4 million for 6,409,689 class members, $4.74 per class member); *Luster v. Wells Fargo Dealer Servs.*, No. 15-cv-1058 (N.D. Ga.) ($14.8 million for 3,128,914 class members, $4.73 per class member); *Gehrich v. Chase Bank USA, N.A.*, No. 12-cv-5510, 2016 WL 806549 (N.D. Ill. Mar. 3, 2016) ($34 million for more than 32 million class members, $1.06 per class member); *Arthur v. Sallie Mae Inc.*, No. 10-cv-00198 (W.D. Wash.) ($24.15 million for 7,792,256 class members, $3.10 per class member); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013) ($17.1 million for 4,546,293 class members, $3.76 per class member); *Duke v. Bank of Am., N.A.*, No. 12-cv-04009 (N.D. Cal.) ($32,083,905 for approximately 7,723,860 class members, $4.15 per class member); *Connor v. JPMorgan Chase Bank*, No. 10-cv-1284 (S.D. Cal.) ($11,665,592.09 for 2,684,518 class members, $4.35 per class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-cv-190 (N.D. Ill.) ($39,975,000 for 9,065,262 class members, $4.41 per class member); *In re Capital One Tel. Consumer Protection Act Litig.*, No. 12- cv-10064 (N.D. Ill.) ($75,455,098 for 16,645,221 class members, $4.53 per class member); *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) ($12.2 million for 47 million class members, $0.26 per class member); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248 (S.D. Cal.) ($9 million for more than 6,079,411 class members, $1.48 per class member); *Luster et al. v. Wells Fargo Bank, N.A.*, 15-cv-01058, Dkt. Nos. 72-1, 80 (N.D. Ga. 2017) (granting final approval of settlement creating a $14.8 million fund for unauthorized robocalls with 301,000 claims made, approximately $33 per claimant after deduction of attorneys' fees, costs, and awards); *James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-02424 (M.D. Fla.), Dkt. Nos. 56, 58 (granting final approval of settlement creating a $3.75 million fund for unauthorized robocalls with 24,000 claims made, approximately $81 per claimant after deduction of attorneys' fees, costs, and awards); *Bradshaw v. Bank of Am. Corp.*, No. 13-cv-0431-LAB (JLB) (S.D. Cal.) (settlement fund of over $32,000,000 providing payment of $20 to $40 per class member depending on number of claims submitted); *Couser v. Comenity Bank*, No. 12-cv-2484-MMA-BGS (S.D. Cal.) (settlement fund of $8,475,000 providing payment of $13.75 per class member); *In re Prescription Pads TCPA Litigation*, No. 13-cv-6897 (N.D. Ill.) (settlement fund of $1,000,000 providing payment of up to $20.00 per class member); *Kolinek v. Walgreen Co.*, No. 13-C-4806 (N.D. Ill.) (settlement fund of $11,000,000 providing payment of approximately $30.00 per class member).

Approval. Had Plaintiff succeeded in obtaining class certification on a contested basis, Plaintiff and the Settlement Class could still have faced a challenge to the certification decision of the Court, as well as summary judgment, a trial on the merits, and a post-judgment appeal. *See, e.g.*, (Doc. 50-9 at ¶¶ 17–19).

Here, the central legal issues affecting Skip Trace Subclass Members are whether the RVMs constitute calls under the TCPA, whether VoApps was acting as Defendant's agent, and, critically, whether Defendant obtaining Skip Trace Subclass Members cellular telephone numbers via "skip tracing" or similar techniques broadly establishes that Defendant lacked consent to call them.

Conversely, for the Non Skip Trace Subclass, individualized inquiry is a much more significant hurdle so far as determining whether each member consented to such calls. Because the members of that subclass are affected by issues of individual inquiry—namely, whether each consented to the calls at issue—Plaintiff pursued the best available remedy for them: significant and meaningful injunctive relief along with the preservation of their individual claims.

Thus, Plaintiff struck a reasonable balance of obtaining significant injunctive relief combined with a limited release that preserves the Non Skip Trace Subclass Members' individual damages claims against Penn.[5]

---

[5] *See Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, 2017 WL 4621188, *6 (S.D. Cal. Oct. 16, 2017) (approving TCPA class action settlement with similar injunctive relief); *Schwyhart v. AmSher Collection Servs., Inc.*, 2017 WL 1034201, *1 (N.D. Ala. Mar. 16, 2017) (approving damages and injunctive subclasses in TCPA settlement); *Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 11508671, *3 (S.D. Cal. Sept. 10, 2008) ("The Court also preliminarily approves the Stipulated Injunction"); *see also Fresco v. Auto. Directions, Inc.*, 03-CIV-61063-MARTINE, 2009 WL 9054828, at *5–6, 20 (S.D. Fla. Jan. 20, 2009) (approving Rule 23(b)(2) settlement class wherein class members released future use of the "class action

Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in his awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation. Defendant consistently denied the allegations raised in the Complaint, and made clear at the outset that it would vigorously defend this case through trial as needed, including contesting class certification based on, *inter alia*, individualized consent issues.

Additionally, Defendant is a small business of limited net worth and does not have the resources to fund a larger settlement. Defendant possesses limited applicable insurance – the policy limits of which are being *fully exhausted* between the establishment of the Settlement Fund and the payment of legal fees and costs. To be clear, Defendant has put everything available on the table in this Settlement. Anything more would likely result in Defendant's seeking relief under the United States Bankruptcy Code. Thus, financial realities dictate that a larger pool of available financial resources following trial would be highly unlikely.[6] (Doc. 57-9 at ¶ 19). Given the risks of proceeding and the limited available award, obtaining significant injunctive relief while maintaining the Non Skip Trace Subclass Members' rights to proceed with individual lawsuits is fair, balanced, and reasonable.

---

procedural device" and any individual claims for statutory damages under the Driver's Protection Privacy Act ("DPPA"), but retained the right "to file individual lawsuits under the DPPA or DPPA State Equivalents for actual monetary damages").

[6] *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 508 (W.D. Pa. 2003) ("Under these circumstances, even if the Class were to proceed to trial successfully against Rent-Way, it is highly doubtful that the Class would be able to secure a better recovery than that provided by the proposed Settlement. This factor therefore strongly favors approval of the proposed Settlement."); *In re AmeriSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("The Defendants' inability to withstand greater judgment militates in favor of settlement.").

The uncertainties and delays from continued litigation would have been significant. Complex litigation – like this case – "can occupy a court's docket for years on end, as it has been so far, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *Wilson*, 2016 WL 457011, at *7 (quoting *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992)); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 n.32 (N.D. Ga. 1993) ("[A]djudication of the claims of two million claimants could last half a millennium."). As a result, recovery by any means other than settlement would have required additional complex, protracted, and expensive litigation.

Moreover, any trial in this matter would be complex and expensive, with fact and expert witnesses from across the country. "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted). In addition, trial(s) would be unlikely to take place for some time. With this Settlement, Plaintiff and Skip Trace Subclass Members will receive meaningful payments now, instead of years from now—or perhaps never—and Non Skip Trace Subclass Members retain their rights to pursue individual litigation. *See id.* at 582. In short, absent settlement, the expense, duration, and complexity of protracted litigation against Defendant would be substantial. In light of these considerations, "the benefits to the class of the present settlement become all the more apparent." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

In addition, in evaluating this factor, "[t]he court should consider the vagaries

of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993)). Particularly, because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler*, 822 F. Supp. at 1554 (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides important benefits to the Settlement Class. Considering the uncertainties inherent in continued litigation, including trial and an appeal of this case, along with the delays and complexities inherent in this type of litigation, the Settlement is in the best interest of Plaintiff and the Settlement Class. *Lipuma*, 406 F. Supp. 2d at 1324.

### 3. The remaining Rule 23(e)(2)(C) factors weigh in favor of approval.

As detailed above, the Parties' preliminarily approved notice plan ensured that Skip Trace Subclass Members received effective notice informing them about the Settlement and allowed for them to easily submit claims for compensation from the Settlement Fund. ALCS Decl. ¶¶ 5–12. Payments for approved claims will be distributed no later than sixty days after the Effective Date. S.A. ¶¶ 3.7, 1.16. The terms of attorney's fees are discussed below and in Plaintiff's Motion for Fees (Doc. 62).

The Parties did agree to a maximum number of exclusions, above which

Defendant may elect to terminate this agreement, S.A. ¶ 9.1(f); however, as there are no opt-outs, that provision has not been triggered.

Likewise, as further discussed in Plaintiff's Motion for Attorney's Fees, counsel for the plaintiffs in both this case and the parallel *Thomas v. Penn Credit Corp.*, No. 6:19-cv-00823-GAP-EJK (M.D. Fla. filed Apr. 30, 2019) (hereinafter "*Thomas*" or "*Thomas/Gurzi*") case have agreed to seek fees, costs, and expenses, together, in solely this matter, and to split any such fee award 50% to counsel in *Thomas/Gurzi* and 50% to counsel in *Guidry*.

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed.  Subsection (C) of Rule 23(e)(2) is therefore met.

## 4.  The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably relative to one another because all Skip Trace Subclass Members are eligible for compensation following submission of a claim form, and Non Skip Trace Subclass Members obtain valuable injunctive relief while maintaining their right to pursue individual monetary recovery, if they so choose.

## D.  The Court Should Grant Final Certification of the Settlement Class.

As explained in the Motion for Preliminary Approval, the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3). (Doc. 57 at 11–19). Nothing material has changed, and no objections have been filed. As such, the Court should

17

conclude that the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3), and the Court should finally certify the Settlement Class.

### E. Class Representative and Service Award.

As explained in the Motion for Fees, (Doc. 62 at 24–25), the Settlement proposes that the Class Representative receive a Service Award of $2,500.00 for his participation in this action and service to the Settlement Class. Plaintiff has worked diligently in service of the Class. (Doc. 62-1 at ¶ 41). Mr. Guidry worked hand-in-hand with Plaintiff's Counsel from the start, having many conversations about this case, staying involved in and apprised of litigation strategy from day one. Mr. Guidry was involved in and approved the settlement terms reached in this case. Yet, the subject of service awards was not raised nor negotiated until after the Parties had reached a settlement of the underlying claims, and the Plaintiff's consent and agreement to the terms of the Settlement was not, nor is it in any way, conditioned on his receipt of a service award. *Id.* at ¶ 42. Indeed, Mr. Guidry is aware that, under current Eleventh Circuit precedent, he is not able to obtain a service award. *Id.*

Accordingly, Plaintiff requests the Court reserve ruling on the service award issue pending the *en banc* review of *Johnson v. NPAS Sols., LLC*, 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).

### F. Attorneys' Fees, Costs, and Expenses.

Class Counsel also seeks Court approval of $1,402,500 (30% of the Settlement Fund) to Class Counsel for their attorneys' fees, and payment from the Settlement Fund of $38,817.38 for costs and expenses incurred by Class Counsel in connection

with prosecuting this Litigation. *See* (Doc. 62). The Parties negotiated these attorneys'

fees, costs, and expenses only after reaching agreement on all other material terms of

the Settlement. *See* (Doc. 62-1 at ¶ 19). Attorneys' fees, costs, and expenses, in

whatever amount set by the Court, are to be paid as soon as possible after the Effective

Date. S.A. ¶ 13.1.

### G. The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval of the Settlement.

In addition to the factors discussed above, the Court should give "great weight

to the recommendations of counsel for the parties, given their considerable experience

in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D.

at 312-13 ("In determining whether to approve a proposed settlement, the Court is

entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial

judge, absent fraud, collusion, or the like, should be hesitant to substitute its own

judgment for that of counsel.'") (citations omitted). "[T]he reaction of the class is

[likewise] an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d at 1324.

Thus, a low number of objections suggests that the settlement is reasonable, while a

high number of objections would provide a basis for finding that the settlement was

unreasonable. *See id.*

Here, Class Counsel wholeheartedly endorses the Settlement. *See* (Doc. 57-9 at

¶ 23). Additionally, the reaction of the Settlement Class to the Settlement here has

been positive, with no exclusions and no objections. ALCS Decl. ¶¶ 13–14.

In accord with the Settlement terms, the deadline established by the Court for

objections expired on July 23, 2021. (Doc. 60 at 8). The Settlement Class was given ample opportunity to review and object to the Notice of Proposed Class Action Settlement and Plaintiff's application for attorneys' fees, costs, and expenses and service award to Plaintiff—which was filed on July 2, 2021 (Doc. 62)—prior to the objection deadline. *See In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010). Yet not a single objection or request for exclusion was received. ALCS Decl. ¶¶ 13–14; *see also Association for Disabled Americans. v. Amoco Oil Co.,* 211 F.R.D. 457, 467 (S.D. Fla. 2002) (recognizing that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").

The Settlement is supported by Plaintiff, who has been at the helm of this case since its inception, participated throughout the prosecution of his claims, and was involved in the decision to enter into the Settlement with Defendant. (Doc. 57-9 at ¶ 20).

## III.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court enter a

Final Judgment certifying the Settlement Class, approving the Settlement, granting the motion for attorney's fees, costs, and expenses, and dismissing the action with prejudice.[7]

Dated:  August 20, 2021                    Respectfully submitted,

                                           **MORGAN & MORGAN**
                                           **COMPLEX LITIGATION GROUP**

                                           */s/ John A. Yanchunis*
                                           John A. Yanchunis
                                           Patrick A. Barthle II
                                           Octavio Gomez
                                           201 North Franklin Street, 7th Floor
                                           Tampa, Florida  33602
                                           Telephone:  (813) 223-5505
                                           Facsimile:  (813) 223-5402
                                           jyanchunis@forthepeople.com
                                           pbarthle@forthepeople.com

                                           *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 20, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to all attorneys of record in this matter.

                                           */s/ John A. Yanchunis*
                                           John A. Yanchunis

---

[7] A proposed Final Approval Order and Judgment was filed with the Motion for Preliminary Approval as its Exhibit 2. *See* (Doc. 57-3).