## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |
|---|---|
| TERRANCE GUIDRY, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | |
| v. | Case No.: 6:19-cv-1936-Orl-GAP-LRH |
| PENN CREDIT CORPORATION, | |
| *Defendant* | |

## FINAL APPROVAL ORDER AND JUDGMENT

This matter is before the Court on Plaintiff's Motion for Award of Attorneys' Fees, Costs, and Expenses (Doc. 62) and the Parties' Joint Motion for Final Approval of the Class Action Settlement (the "Motion for Final Approval") (Doc. 63) of the above-captioned matter between Plaintiff, Terrance Guidry ("Plaintiff" or "Class Representative"), and Defendant, Penn Credit Corporation ("Defendant" or "Penn"), as set forth in the Class Action Settlement Agreement between Plaintiff and Defendant (the "Settlement Agreement").  The Court, being fully advised in the premises and after a hearing on September 20, 2021, hereby finds as follows:

1.    Unless defined herein, all defined terms in this Order have the respective meanings ascribed to the same terms in the Settlement Agreement.

2.    This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

1

3.      On May 6, 2021, this Court preliminarily approved the Settlement, and certified, for settlement purposes and pursuant to Fed. R. Civ. P. 23(b)(2), the Settlement Class consisting of individual persons within the United States that were sent and/or received, without consent, a prerecorded voicemail message sent by VoApps to the individual's cellular voicemail service on behalf of Penn from April 30, 2015 through and including May 6, 2021 (Doc. 60).

4.      Also on May 6, 2021, the Court certified, for settlement purposes and pursuant to Fed. R. Civ. P. 23(b)(3), the Skip Trace Subclass, a subclass of the Settlement Class consisting of the approximately two million Class Members whose cellular telephone numbers were obtained by Penn via the use of "skip tracing" or similar techniques.  The Court also certified the Non Skip Trace Subclass, consisting of the Class Members who are not also Skip Trace Subclass Members.

5.      The Court approves the settlement and finds the settlement is, in all respects, fair, reasonable, and adequate to the Settlement Class, within the authority of the parties, and the result of extensive arm's length negotiations with the guidance of an experienced mediator.

6.      This Court confirms the proposed Settlement Class satisfies the requirements of Fed. R. Civ. P. 23, as found in the Court's Preliminary Approval Order.  Accordingly, this Court makes final the conditional certification set forth in the Preliminary Approval Order.

**<u>Certification of the Settlement Class</u>**

7.    Pursuant to Fed. R. Civ. P. 23(a), the Court finds that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Class; (c) the claims of the Class Representative, identified above, are typical of the claims of the Settlement Class; and (d) the Class Representative will fairly and adequately protect the interests of the Settlement Class.

8.    Specifically, here, the Court must determine that the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004)); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as in this case) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate over individual issues and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16.  District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

9.    The first prerequisite to class certification is numerosity, which requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P.

23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). While the exact size of the putative class need not be specified, "'generally less than twenty-one is inadequate, more than forty adequate; with numbers between varying according to other factors.'" *Cox v. Am. Cast. Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice para. 23.05[1] n.7 (1978)).

10.    Here, approximately two million Class Members' cellular telephone numbers were obtained by Penn via the use of "skip tracing" or similar techniques, making up just the Skip Trace Subclass. Thus, the numerosity requirement is readily satisfied.

11.    The second prerequisite to class certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as commonality does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number

4

of the putative class members." *Sharf v. Financial Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (internal citations omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

12.    Here, the commonality requirement of Rule 23(a)(2) is satisfied. Questions of fact and law common to the Settlement Class, include, among others:

a.  whether during the class period, Defendant used an artificial or pre-recorded voice in connection with its placement of calls to the cellular telephones of Plaintiff and putative Class Members;

b.  whether Defendant is subject to the TCPA;

c.  whether Defendant can show that it obtained prior express consent from Plaintiff and putative Class Members to place calls to their cellular telephones using an ATDS or artificial or pre-recorded voice;

d.  whether Defendant's conduct violates the TCPA;

e.  whether Defendant's conduct was negligent;

f.  whether Defendant's conduct was knowing and/or willful;

g.  whether Defendant is liable for damages, and the amount of such damages;

h.  whether Plaintiff and putative Class Members are entitled to declaratory relief;

i.  whether Defendant should be enjoined from engaging in conduct in

violation of the TCPA in the future; and

    j.   whether Plaintiff and Class Members are entitled to any other remedy.

13.    The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification."). Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

14.    Here, the typicality requirement is satisfied for the same reasons that Plaintiff's claims meet the commonality requirement.  Specifically, Plaintiff and Settlement Class Members were each subjected to the same conduct – they all received ringless voice mails ("RVMs") sent by VoApps, Inc. ("VoApps") to the individual's cellular voicemail service on behalf of Penn. Plaintiff's claim is typical because he did not consent to receive calls from Defendant.

15.    As to adequacy, Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 Newberg on

Class Actions § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625-26.

16.     Plaintiff is a member of the Settlement Class and he does not possess any interests antagonistic to the Settlement Class. In addition, proposed Class Counsel are experienced in class action litigation, including TCPA actions, and have submitted evidence establishing their skills and experience in handling class litigation around the country and in this District. Accordingly, the requirements of Rule 23(a) are met.

17.     In addition to meeting the prerequisites of Rule 23(a), the proposed Skip Trace Subclass must also meet one of the three requirements of Rule 23(b).  *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 650 (S.D. Fla. 2012). Here, Plaintiff seeks certification for the Skip Trace Subclass under Rule 23(b)(3), which requires that (i) questions of law and fact common to members of the class predominate over any questions affecting only individuals, and that (ii) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).  "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-

wide basis." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004). The Settlement Class meets these requirements.

18.     Pursuant to Fed. R. Civ. P. 23(b)(3), the Court finds that: (A) the questions of law or fact common to the members of the Skip Trace Subclass predominate over the questions affecting only individual members, and (B) certification of the Skip Trace Subclass is superior to other available methods for the fair and efficient adjudication of the controversy.

19.     Specifically, Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes,* 131 S. Ct. at 2551-57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate in a case "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing Klay, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . ."). Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all settlement class members of the class in a single adjudication." *Tornes v. Bank of America, NA* (In re Checking Account Overdraft Litig.), 275 F.R.D. 654, 660 (S.D. Fla. 2011). "When 'one or more of the central issues in the action are

common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, pp. 123-124 (3d ed. 2005)).

20.    Common issues predominate here because the central liability question in this case — whether Defendant sent or caused prerecorded voicemails to be sent to the Skip Trace Subclass Members' cellular telephone services — can be established through generalized evidence. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir. 2004) ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

21.    Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of numerous potential claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

22.    Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Skip Trace Subclass. As

courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'" *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

23.     Factors the Court may consider are: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class.  As noted earlier, any perceived difficulties managing the Skip Trace Subclass need not be considered in this settlement context. *Amchem*, 521 U.S. at 620; *Sullivan v. DB Invs., Inc.*, 667 F.3D 273,302-303 (3d Cir. 2011) (holding that potential variances in different states' laws would not defeat certification of a settlement-only class because trial management concerns were not implicated by a settlement-only class, as opposed to a litigated class).

24.     Here, resolution of numerous potential claims in one action is superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment in the instant case, each Skip Trace Subclass Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result

of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants.

25. Moreover, there is no indication that Members of the Skip Trace Subclass have an interest in individual litigation or an incentive to pursue their claims individually, given the small amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually"). Additionally, the proposed Settlement will give the Parties the benefit of finality, and because this case has now been settled, pending Court approval, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case . . . would present intractable management problems. . . .").

26. Plaintiff also seeks certification of the broader Settlement Class under Rule 23(b)(2). The Settlement Class consists of all persons within the United States that were sent and/or received, without consent, a prerecorded voicemail message sent by VoApps to the individual's cellular voicemail service on behalf of Penn from April 30, 2015 through and including the date the Preliminary Approval Order was entered by the Court.

27. Under Rule 23(b)(2), certification is appropriate where a defendant "has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Here, certification of the Settlement Class under Rule 23(b)(2) is appropriate because Defendant has acted on grounds that apply generally to all class members via the RVMs Settlement Class Members were sent and/or received, and because the Parties have agreed to meaningful injunctive relief that will improve Defendant's practices for the benefit of all Class Members. Further, Non Skip Trace Subclass Members only receiving this injunctive relief are expressly free to pursue individual TCPA claims against Penn.

28.     Accordingly, all requirements for certification of the Settlement Class and Skip Trace Subclass are met here, and the court finally certifies the classes for settlement purposes.

29.     Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

30.     As discussed above, proposed Class Counsel have experience prosecuting class actions and other complex litigation.  Further, proposed Class Counsel have investigated and prosecuted the claims in this matter, have dedicated resources to the investigation of those claims, and have negotiated the settlement of

this matter to the benefit of Plaintiff and the proposed Settlement Class. Accordingly, the Court finally appoints John Allen Yanchunis Sr., Patrick A. Barthle II, and Octavio Gomez of Morgan & Morgan as Class Counsel.

## Final Approval of the Settlement

31.     After determining that a proposed settlement class is appropriate for certification, courts next consider whether the proposed settlement itself warrants approval.

32.     Specifically, in deciding whether to approve the Settlement, the Court must determine whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Lieberman*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson v. EverBank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016).

33.     Amended Rule 23(e)(2) standardizes the factors governing final approval, directing that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

13

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

34.     The first two factors under the amended Rule 23(e)(2) are intended to "look" to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note. In determining whether these factors are satisfied the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) Advisory Committee's Note.

35.     As explained above, Plaintiff and Class Counsel have adequately represented the Class.  Moreover, the Settlement was negotiated at arm's length using experienced mediator Judge John Thornton. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"). Subsections (A) and (B) of Rule 23(e)(2) are therefore met.

36.     The Settlement provides fair, reasonable, and adequate relief to the Settlement Class Members, especially in light of the numerous significant risks if this case had proceeded towards ruling on class certification, dispositive motions, and trial. In determining whether a settlement is fair, given the potential range of recovery, "the

fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (King, J.), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1059 (M.D. Fla. 1988); *see also, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

37.     Given the number of claims submitted, there will be a *pro rata* distribution of $70.08 to each Skip Trace Subclass claimant. This per-claimant benefit compares favorably to other settlements.

38.     Non Skip Trace Subclass Members receive the benefit of the injunctive relief described below and retain their right to pursue individual damages claims.

39.     Alternatively, continued litigation would have involved substantial delay and expense, which further counsels in favor of final approval. Had Plaintiff succeeded in obtaining class certification on a contested basis, Plaintiff and the Settlement Class could still have faced a challenge to the certification decision of the

Court, as well as summary judgment, a trial on the merits, and a post-judgment appeal. The uncertainties and delays from this process would have been significant. As a result, recovery by any means other than settlement would have required additional complex, protracted and expensive litigation.

40.    Here, the central legal issues affecting Skip Trace Subclass Members are whether the RVMs constitute calls under the TCPA, whether VoApps was acting as Penn's agent, and, critically, whether Penn obtaining Skip Trace Subclass Members cellular telephone numbers via "skip tracing" or similar techniques broadly establishes that Penn lacked consent to call them.

41.    Conversely, for the Non Skip Trace Subclass, individualized inquiry is a much more significant hurdle so far as determining whether each member consented to such calls. Because the members of that subclass are affected by issues of individual inquiry—namely, whether each consented to the calls at issue—Plaintiff pursued the best available remedy for them: significant and meaningful injunctive relief along with the preservation of their individual claims.

42.    Likewise, Defendant represents that it is a small business of limited net worth and does not have the resources to fund a larger settlement. Defendant possesses limited applicable insurance – the policy limits of which are being fully exhausted between the establishment of the Settlement Fund and the payment of legal fees and costs. Thus, Penn has put everything available on the table in this Settlement. Anything more would likely result in Penn's seeking relief under the United States Bankruptcy Code. Thus, financial realities dictate that a larger pool of available

financial resources would be highly unlikely.[1] Given the risks of proceeding and the limited available award, obtaining significant injunctive relief while maintaining the Non Skip Trace Subclass Members' rights to proceed with lawsuits is fair, balanced, and reasonable.

43.    Considering the uncertainties inherent in continued litigation, including class certification, trial, and an appeal of this case, along with the delays and complexities inherent in this type of litigation, and the practical inability to receive additional funds via trial and judgment, the relief provided for the class by the Settlement is fair, reasonable, and adequate.

44.    The Settlement relief will be distributed via a straight-forward claims process and an easy to understand and use claim form.  Checks for approved claims will then be provided as soon as practicable, but no later than sixty (60) days after the Effective Date (as defined in the Agreement).

45.    Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on the Class relief.  As explained further below, Plaintiff has sought attorneys' fees of up to thirty (30%) of the Settlement Fund, plus reasonable out-of-pocket costs and litigation expenses incurred by Class Counsel.  Attorneys' fees,

---

[1] *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 508 (W.D. Pa. 2003) ("Under these circumstances, even if the Class were to proceed to trial successfully against Rent-Way, it is highly doubtful that the Class would be able to secure a better recovery than that provided by the proposed Settlement. This factor therefore strongly favors approval of the proposed Settlement."); *In re AmeriSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("The Defendants' inability to withstand greater judgment militates in favor of settlement.").

costs, and expenses, in whatever amount set by the Court, are to be paid as soon as possible after the Effective Date.

46.    The parties have agreed to a maximum number of exclusions, above which Defendant could have elected to terminate this agreement.  Here, no requests for exclusion were received.

47.    The last requirement of Amended Rule 23(e) is that the Settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Here, the Settlement treats all Class Members equitably relative to one another because all Skip Trace Subclass Members are eligible for *pro rata* compensation following submission of a claim form, and Non Skip Trace Subclass members retain their ability to individually sue for damages while receiving the benefit of the Stipulated Injunction.

48.    Notice has been provided in accordance with the Court's Order granting Preliminary Approval, and the substance of and dissemination program for the Notice, which included the creation of a Settlement Website, establishment of a toll-free telephone number, and direct email notice to the Skip Trace Subclass, and additional social media and digital indirect notice, all of which constituted the best notice practicable under the circumstances; constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class and Skip Trace Subclass of the pendency of the Action and their rights to object to the Settlement Agreement and to appear at the Final Approval Hearing; was reasonable and provided due and sufficient notice to all persons entitled to notice of the settlement, including

appropriate state and federal officials pursuant to 28 U.S.C. § 1715; and fully complied with the requirements of Fed. R. Civ. P. 23 and due process.

49.    The Court has read and considered the papers filed in support of the Motion for Final Approval, including the Settlement Agreement and the exhibits thereto, memoranda and arguments submitted on behalf of the Plaintiff, Settlement Class Members, and the Defendant.   No written objections were filed by any Settlement Class Member. The Court held a hearing on September 20, 2021, at which time the parties were afforded the opportunity to be heard in support of or in opposition to the Settlement.   Furthermore, the Court finds that notice under the Class Action Fairness Act was effectuated on March 17, 2021, and that ninety (90) days has passed without comment or objection from any governmental entity.

50.    The Settlement as set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class in light of the complexity, expense and duration of litigation and the risks involved in establishing liability and damages and in maintaining the class action through trial and appeal.

51.    The Settlement consideration provided under the Settlement Agreement constitutes fair value given in exchange for the Release set forth in the Settlement Agreement. The Court finds that the injunctive relief provided is reasonable considering the facts and circumstances of the claims and affirmative defenses available in the Action, and the potential risks and likelihood of success of alternatively pursuing trials on the merits.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

52.    The Settlement Agreement is finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class. The Parties are directed to consummate the Settlement Agreement in accordance with its terms. In reaching this conclusion the Court has considered all of the factors set forth in Rule 23(e)(2).

53.    All members of the Settlement Class are bound by the terms and conditions of the Settlement Agreement, except those persons in the Skip Trace Subclass who made timely and valid requests for exclusion.  Those excluded persons are not bound by this Final Approval Order and Judgment.  The list of Skip Trace Subclass Members submitted by Plaintiff who submitted notices seeking exclusion is hereby accepted as the list of persons who have made timely and valid requests for exclusion.

54.    The Settlement Agreement is hereby finally approved in all respects, and the Parties are hereby directed to perform its terms.

55.    Other than as set forth in the Settlement Agreement and this order, the Parties shall bear their own costs and attorneys' fees.

56.    Subject to the terms and conditions of the Settlement Agreement, this Court hereby dismisses the Action on the merits and with prejudice as to Plaintiff and the Skip Trace Subclass, and without prejudice as to the remainder of the Settlement Class, or the Non Skip Trace Subclass.

57.    The Parties and the Settlement Class are bound by the terms and conditions of the Settlement Agreement.

20

58.     The Settlement Administrator shall take all reasonable steps necessary to ensure that the settlement is effectuated in a manner consistent with the Settlement Agreement.

59.     The Court orders the Parties to the Settlement Agreement to perform their obligations thereunder.  The Settlement Agreement shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an order of this Court.

## Injunction

60.     On or before the Effective Date, and continuing for a period of no less than ten (10) years after the Effective Date, or until there are such changes in the law related to the below practices that occur after the Effective Date, and as more fully set forth in the Stipulated Injunction, Penn shall:

A.      Update and improve its processes and procedures concerning compliance with the TCPA. Such processes and procedures shall include implementation of a scrub of phone numbers placed by clients or otherwise obtained to determine whether the number is a cell phone.

B.      If a scrub determines a phone number is a cell phone, Penn shall not itself, nor through any third party, send any prerecorded messages to the number unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls.

C.      Penn shall not itself, nor through any third party, send any prerecorded messages to any numbers Penn obtains through "skip tracing" or similar

means unless it has a good faith basis to believe there is consent to call the number or the law otherwise permits such calls.

D.   Penn shall revise its written TCPA processes, procedures, and training materials.

E.   Penn shall implement regular training for its employees concerning its TCPA processes and procedures.

F.   Penn shall use its best efforts to ensure that all existing and newly hired Penn debt collectors execute an acknowledgement confirming their understanding of Penn's policies and procedures regarding the TCPA.

## Settlement Fund

61.   Pursuant to the Settlement Agreement, the Defendant has further agreed to pay $4,675,000 to create the Settlement Fund. Amounts awarded to Class Counsel, and the costs of claims administration, will be paid from the Settlement Fund. Within sixty (60) days after the Effective Date, the Settlement Administrator shall pay from the Settlement Fund the Skip Trace Subclass Recovery to each Skip Trace Subclass Member who filed a valid Claim Form pursuant to the Settlement Agreement a pro-rata share of the remaining balance of the Settlement Fund after (a) payment of Attorneys' Fees and Costs to the Class; (b) payment to the Class Representative; and (c) payment of Settlement Administration Expenses. The amounts paid to each valid claimant has been determined to be $70.08. In no event shall a Class Member receive more than the maximum that he or she could have received under the TCPA for a single call.

## Release of Claims

62.     Upon the Effective Date, and in consideration of the settlement relief described herein and in the Settlement Agreement, the Plaintiff and the Skip Trace Subclass Members fully, finally, and forever settle, release, relinquish, and discharge the Released Parties from the Released Claims, as defined and described herein and in the Settlement Agreement and including any claims that were or could have been brought in the Action, and are forever barred from asserting any of the Released Claims in any court or forum whatsoever against any of the Released Parties.

63.     Upon the Effective Date, and in consideration of the settlement relief described herein, the Releasing Parties shall be deemed to have released, and by operation of this Final Approval Order and Judgment shall have fully, finally, and forever, released, relinquished, and discharged any claim to injunctive relief against the Released Parties relating to the alleged receipt of prerecorded voicemails made by or on behalf of Penn on their cellular telephones from April 30, 2015, through and including May 6, 2021.  Non Skip Trace Subclass Members' individual damages claims of any type related to the alleged receipt of prerecorded voicemails made by or on behalf of Penn on their cellular telephones from April 30, 2015, through and including May 6, 2021, are expressly preserved; however, the Non Skip Trace Subclass Members shall be deemed to have waived the right to participate in any way (as a class representative, class member, etc.) in any class or representative proceeding related to claims that they allegedly received prerecorded voicemails made by or on behalf of

Penn on their cellular telephones from April 30, 2015, though and including the date of Preliminary Approval in violation of the TCPA.

64.     Upon the Effective Date, the above release of claims and the Settlement Agreement will be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Settlement Class Members, Releasing Parties, and their heirs, executors, administrators, successors, and assigns that involve the Released Claims and allegations in the Action, including but not necessarily limited to *Thomas v. Penn Credit Corporation*, Case No. 19-cv-00823-GAP-EJK (M.D. Fla.).

65.     Without affecting the finality of this Final Approval Order and Judgment in any way, the Court retains jurisdiction over: (a) implementation and enforcement of the Settlement Agreement until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto pursuant to the Settlement Agreement has been performed; (b) any other action necessary to conclude the Settlement and to administer, effectuate, interpret and monitor compliance with the provisions of the Settlement Agreement; and (c) all parties to this Action and Settlement Class Members for the purpose of implementing and enforcing the Settlement Agreement.

66.     Neither this Final Approval Order and Judgment as to the Defendant, nor the Settlement Agreement shall be construed or used as an admission or concession by or against the Defendant or any of the Released Parties of any fault, omission, liability, or wrongdoing, or the validity of any of the Released Claims in any

action or proceedings whatsoever.  This Final Approval Order and Judgment is not a finding of the validity or invalidity of any claims in this Action or a determination of any wrongdoing by the Defendant or any of the Released Parties. The final approval of the Settlement Agreement does not constitute any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of Plaintiff, the Settlement Class Members, or the Defendant.

**Attorney's Fees, Costs, and Expenses, and Service Award**

67.     Plaintiff also separately sought Attorney's Fees, Costs, and Expenses and a Service Award for the Class Representative (Doc. 62). Plaintiff seeks Attorneys' Fees of 30% of the Settlement Fund and expenses of $38,817.00.

68.     In a class case as this one, the Eleventh Circuit has directed that the fee be based upon a percentage of the class benefit.  *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).  "There is no hard and fast rule … because the amount of any fee must be determined upon the facts of each case." *Id.* at 774.  The court should look at such factors as the time required reaching a settlement, whether there are any substantial objections, the economics of a class action, the criteria set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) and any other "unique" circumstances.  *Camden 1*, 946 F.2d at 775.  In *Camden I*, the Eleventh Circuit recognized that a fee award of 50 percent of the benefit is the upper limit; that the majority of fee awards fall between 20 and 30 percent.  *Camden I*, 946 F.2d at 774-75.  As stated in *Camden I*, 25 percent serves as the default "benchmark." *Id.* at 774-75; *see also In re Friedman's, Inc. Securities Litig.*, No. 1:03-cv-3475-WSD, 2009 WL

1456698, at *2 (N.D. Ga. May 22, 2009) ("[C]ommon fund cases in district courts in the Eleventh Circuit have awarded fee percentages within a range close to the 30% requested here.").

69.     For purposes of determining fees under the controlling percentage of the benefit fee-assessment method, the total value of the common fund or class benefit, both monetary and nonmonetary relief, are considered. *Camden I*, 946 F.2d at 771; *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 628 (11th Cir. 2015).

70.     The Court has considered the twelve factors for evaluating the reasonable percentage to award class-action counsel, including: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).   These twelve factors are not exclusive, however:   "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in

prosecuting a class action." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 775).

71.     Class Counsel expended significant effort to achieve the settlement for the Class.  Class Counsel have litigated this action for over a year, and reached a hard-fought settlement only after mediation. Although the present case was resolved before trial, Class Counsel invested significant time and resources investigating and litigating this action.   In performing this work on behalf of the Class, Class Counsel spent significant time without any assurance that the commitment of time and effort to this case would result in the payment of any fee. Class Counsel should be compensated for the time and labor invested to obtain this resolution on behalf of the Class.

72.     As explained above regarding Final Approval of the Settlement, the issues presented required skilled counsel.  Class Counsel prosecuted this case on a contingent fee basis.  As such, they assumed a risk of nonpayment or underpayment.

73.     The requested fee is within the customary fees awarded in similar cases. "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (approving award equal to 30% of common fund).   "These percentages are the prevailing market rates throughout the United States." *Id.*  An award of 30% is below the upper-benchmark and less than the growing trend in this Circuit of 33 1/3% or above.[2]  Likewise, such an award is equal to other fee awards in

---

[2] *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); *Seghroughni v. Advantus Rest, Inc.*, No. 12-2000, 2015 WL 2255278, at

similar cases.[3]    Accordingly, Class Counsel's requested fee award of 30% of the
Settlement Fund is appropriate.

74.    The remaining *Camden I* factors also support Class Counsel's fee request.
The burdens of this litigation and the results obtained on behalf of Plaintiff and the
Class weigh in favor of the fee requested.  The fee request is rooted in "the economics
involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333.
"[P]roper incentives must be maintained to insure that attorneys of this caliber are
available to take on cases of significant public importance like this one." *In re Checking
Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1368 (S.D. Fla. 2011).

75.    Under *Camden I*, use of the lodestar analysis is improper in common fund
cases.  *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362-63 (declining

---

*1 (M.D. Fla. May 13, 2015) ("An attorney's fee ... which is one-third of the settlement fund ... is fair
and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this
action, the Lead Counsel's ability and experience in class action litigation, and fee awards in
comparable cases."); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26,
2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield
v. NoteWorld, LLC*, No. 10-117, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33
1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, No.
08-691, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third
of the maximum $2,020,000 common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317,
(Doc. 1557 at 8-10) (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part
because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*,
MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of
settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-2152, (Doc. 626 at 7) (S.D.
Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees
($1,201,728.42) because they expended significant time and resources on a purely contingent basis
under the common fund theory).
3 *See, e.g.*, *Med. & Chiropractic Clinic, Inc. v. KMH Cardiology Centres Inc.*, 8:16-CV-644-T-23JSS, 2017
WL 11046397, at *2 (M.D. Fla. Nov. 17, 2017) (awarding 30% fee in TCPA class case); *James v.
JPMorgan Chase Bank, N.A.*, 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017)
(approving a 30% fee in TCPA class action); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 1:12-CV-
2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (awarding 33 1/3 % in TCPA class
case).

to perform lodestar cross-check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees . . . without discussing lodestar at all") (internal quotations marks, brackets and emphasis omitted).   However, the Court has undertaken a lodestar analysis based on counsel's Supplemental Declaration (Doc. 64).  This analysis reflects a multiplier of approximately 1.7, which the Court finds to be reasonable under the circumstances.

76.     Accordingly, the Court approves payment of attorneys' fees and costs to Class Counsel in the amount of $1,402,500.00 in attorneys' fees and $38,817.38 in costs, together with $516,086.00 in Settlement Administration Expenses. These amounts shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.  Consistent with 11th Circuit precedent, the Court declines to approve a service award to Plaintiff.  The Court, having considered the materials submitted by Class Counsel in support of final approval of the Settlement and their request for attorneys' fees and costs, and in response to the filed objections thereto, finds the award of attorneys' fees and costs appropriate and reasonable and the Court notes that the Notice specifically and clearly advised the Class that Class Counsel would seek the award.

77.     As set out in Section 3.9 of the Settlement Agreement, to the extent any funds remain following distribution to the Skip Trace Subclass, such additional sums will be subject to *cy pres* distribution. At the Final Hearing the parties proposed the Florida Bar Foundation as the *cy pres* recipient. The Court, being familiar with the

Florida Bar Foundation, finds it to be an appropriate recipient of any *cy pres* award. Accordingly, the parties shall distribute any such *cy pres* funds to the Florida Bar Foundation in accordance with Section 3.9 of the Settlement Agreement.

Upon consideration of the above, it is **ORDERED** that the Motion for Final Approval (Doc. 63) and the Motion for Attorneys' Fees, Costs, and Expenses (Doc. 62) are **GRANTED** consistent with this order.  The Clerk is directed to enter this Judgment and close the file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on September 22, 2021.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties